(No. 40649.-

WILLIAM COURSEY, Appellee, *vs.* THE GREATER NILES TOWNSHIP PUBLISHING CORPORATION *et al.*, Appellants.

*Opinion filed May 29, 1968.—Rehearing denied Sept. 24, 1968.*

HOELLEN & WILLENS, of Chicago, (SHERWIN WILLENS, of counsel,) for appellants.

GENE J. SHAPIRO and EDWARD G. RASZUS, both of Chicago, for appellee.

Mr. JUSTICE KLUCZYNSKI delivered the opinion of the court:

Plaintiff, William Coursey, a former Skokie, Illinois, patrolman, sued the Greater Niles Township Publishing Corporation and Ronald R. Moore, Jr., for allegedly libelous statements appearing in the September 17, 1964, edition of the *Skokie News,* a weekly newspaper owned and published by them. Summary judgment for the defendants was entered by the circuit court of Cook County and plaintiff appealed to the Appellate Court, First District, on the grounds that the pleadings presented a genuine issue of fact which should have been tried. The appellate court reversed the judgment of the trial court and remanded the cause for further proceedings (82 Ill. App. 2d 76). We have granted leave to appeal.

The appellate court opinion accurately states the facts necessary to disposition of the issues raised in this court; accordingly, we quote from that opinion, beginning with the text of the article forming the basis of the present action.

" '*Fire Coursey, Tell of Girl's Lie Test.*

The teenage girl responsible for having several charges leveled against Skokie Ptm. William Coursey did take a lie detector test— and passed it with "flying colors"—one day last week, reports Corporation Counsel Marvin Glink.

This was not made public, however, until after the fire and

police commission last Wednesday found Coursey guilty of all charges and ordered him discharged from the department.

Coursey had been charged with unbecoming conduct, leaving his beat, leaving the village (both without permission) and failure to carry out a direct order.

The commission's formal decision is not expected to be published until early next week, according to chairman Anthony Ross, who, incidentally, will be re-appointed to a new three year term by Mayor Greisdorf very shortly.

Atty. Gene Shapiro, representing the policeman, indicated the case would be presented to the Circuit Court for trial if motions for a rehearing before the commission are denied.

The charges stem from an incident at a Skokie bowling alley one Saturday last April when Coursey found several teens out after curfew, sent some of them home, but allegedly followed—in his squad—the girl as she dropped off a friend in Morton Grove, made immoral suggestions to the girl, then followed her into Lincolnwood.'

"The summary judgment was granted upon the pleadings and upon memoranda of law submitted by both parties. The pleadings consisted of an amended complaint and answer thereto. The amended complaint charged that defendants, intending to injure plaintiff's good name and livelihood and with knowledge that the article was false and with reckless disregard as to whether it was false or not, maliciously composed and caused the article to be published in their newspaper; that the headline was printed in black type, *'Fire Coursey, Tell of Girl's Lie Test'*, and that defendants by this meant that plaintiff was 'fired from his position with said police department'; that he was disreputable, depraved and of low morals and character and had been 'fired for unbecoming conduct'.

"The defendants' answer admitted the publication of the article, denied any intention to injure the plaintiff, or that the article was maliciously published or that it contained scandalous and malicious libels. In addition an affirmative defense was filed averring that the defamatory construction placed on the article was not reasonable and that the news story was fair and privileged comment on a quasi-judicial

proceeding. Following the filing of their answer, defendants made their motion for summary judgment.

"The five charges made to the Fire and Police Commission against the plaintiff are as follows:

'(1) Failure to obey a direct order to submit to a polygraph examination; (2) insubordination, resulting from plaintiff's refusal to submit to a polygraph examination; (3) conduct tending to bring the Skokie Police Department in disrepute, resulting from the alleged improper conduct complained of by the citizen; (4) a technical violation of leaving the assigned "beat" and (5) a technical violation of failing to properly complete "activity reports".'

"The Commission found the plaintiff guilty on four of the five charges, but made no finding on the third charge here involved. Its report on that aspect of the case is as follows:

'3. On Charge # 3, *no verdict is rendered.* While there was much testimony heard concerning the alleged incident, there was also conflict as to times, locations, etc. The Commission, in general, believes that Officer Coursey's conduct on the night in question was unprofessional. He certainly should have handled the situation in a different manner. The Commission feels that there is no need to make a conclusive finding on Charge # 3 in view of the decisions on the other charges. The Commission believes that good police procedure would require that an officer who detains juveniles on a curfew violation for any length of time should report the same in a proper fashion to his superiors.' (Emphasis added.)

"The statement in the article that plaintiff was found guilty on all charges was therefore incorrect." 82 Ill. App. 2d 76, 78-81.

On appeal, defendants reasserted their contentions that the article was not defamatory but capable of an "innocent construction" and that, in any event, it was privileged as a

"fair comment" on government proceedings. The appellate court initially determined, under the authority of *Reed* v. *Albanese,* 78 Ill. App. 2d 53, and *Whitby* v. *Associates Discount Corp.,* 59 Ill. App. 2d 337, that the words of the article were within those categories which constitute libel *per se* since they imputed want of integrity in the discharge of plaintiff's official duties and prejudiced him in his "profession or trade." It further determined, taking the words "in the sense which readers of common and reasonable understanding would attribute to them", that "The only conclusion that can reasonably be drawn from the article in question is that the plaintiff was guilty of making an immoral suggestion of a sexual character to a teen-aged girl. An innocent reading is not plausible, and summary judgment on this ground was improper." (82 Ill. App. 2d at 82.) With this holding, we are in accord.

With respect to defendant's contention that the article was a privileged comment on quasi-judicial proceedings, the appellate court correctly stated the controlling principle as expressed in the Restatement of Torts, § 611, that a newspaper is privileged to report the activities of a "municipal corporation or of a body empowered by law to perform a public duty * * * although it contains matter which is false and defamatory, if it is (a) accurate and complete or a fair abridgement of such proceedings, and (b) not made solely for the purpose of causing harm to the person defamed."

It then noted that the Restatement position was adopted by this court in *Lulay* v. *Peoria Journal-Star,* 34 Ill.2d 112, 115, with that decision being followed by appellate courts in subsequent cases. (*E.g., Segall* v. *Lindsay-Schaub Newspapers, Inc.,* 68 Ill. App. 2d 209, 215.) However, the court held that "These decisions are distinguishable from the instant case, for here the defendants published what turned out to be an *inaccurate account* of the proceedings of the Fire and Police Commission. The error was there-

fore solely attributable to the defendants and hence the matter is not within the privilege hereinbefore discussed." 82 Ill. App. 2d at 83.

Were the propriety of the foregoing holdings of the appellate court the sole issue in this court, we would be constrained to affirm that court's decision, notwithstanding defendants' repeated urging that it too strictly applies the requirement of an accurate and fair report of public proceedings. It is true that the Commission did find the plaintiff guilty on four of the five charges brought against him. However, the one charge which it rendered no verdict on (" (3) conduct tending to bring the Skokie Police Department in disrepute, resulting from the alleged improper conduct complained of by the citizen") clearly encompassed the "sting or gist" of the allegedly libelous statements. As such, the article is not an accurate or fair account of the Commission's proceedings, thereby precluding defendants from invoking the fair comment privilege.

The question remains, however, whether the alleged defamatory material is within the ambit of constitutional protection enunciated in *New York Times Co.* v. *Sullivan,* 376 U.S. 254, 11 L. Ed. 2d 686, 84 S. Ct. 710. The court therein held that the first and fourteenth amendments delimit a State's power to award damages to a public official in a libel action for a defamatory falsehood relating to his official conduct "unless he proves that the statement was made with 'actual malice'—that is, with knowledge that it was false or with reckless disregard of whether it was false or not." (376 U.S. 254, 279, 280, 11 L. Ed. 2d 686, 706.) In that case, it was held that the Chief of Police of Montgomery, Alabama, was a public official but the court explicitly stated at footnote 23 on p. 283 of 376 U.S.: "We have no occasion here to determine how far down into the lower ranks of government employees the 'public official' designation would extend for purposes of this rule, or

otherwise to specify categories of persons who would or would not be included."

In *Rosenblatt* v. *Baer*, 383 U.S. 75, 15 L. Ed. 2d 597, 86 S. Ct. 669, the court did have further occasion to consider who was included within the "public official" classification. That case involved a New Hampshire civil libel action against the author of a newspaper column for allegedly defamatory and false comment concerning the plaintiff's performance when he was a supervisor of a county recreation area. At the outset the court rejected plaintiff's suggestion that State law standards be determinative of whether he was a "public official" within *New York Times*, because "the standards that set the scope of its principles cannot therefore be such that 'the constitutional limits of free expression in the Nation would vary with state lines'. [Citation.]" The court, with reference to the underlying policy considerations of *New York Times*, then declared: "There is, first, a strong interest in debate on public issues, and, second, a strong interest in debate about those persons who are in a position significantly to influence the resolution of those issues * * *. Criticism of those responsible for government operations must be free, lest criticism of government itself be penalized. It is clear, therefore, that the 'public official' designation applies at the very least to those among the hierarchy of government employees who have, or appear to the public to have, substantial responsibility for or control over the conduct of governmental affairs." (383 U.S. 75, 85, 15 L. Ed. 2d 597, 605.) The court found that the plaintiff may have been such a public official but it regarded the evidence as inconclusive because the cause was tried prior to *New York Times* and "was not shaped to the 'public official' issue." It therefore reversed the judgment in plaintiff's favor and remanded the cause for retrial on the possibility that the plaintiff could adduce evidence taking himself outside the public official

category or, if within, prove actual malice within the *New York Times* guidelines.

In the case at bar, the question whether plaintiff was a "public official" was presented to the trial court in the memoranda of law attached to the motion for summary judgment and was briefed and argued in the appellate court. That latter court, relying upon the above language in *Rosenblatt,* said at p. 84: "We must turn then to a consideration of the status of a patrolman. He is an important symbol of government, but the lowest in rank of police officials, and it cannot be said that he has 'substantial responsibility for or control over the conduct of governmental affairs'." It therefore held plaintiff's libel action was not barred by the *New York Times* rule and remanded the cause to the trial court for further proceedings.

Subsequent to the appellate court's opinion, filed March 9, 1967, the Supreme Court of the United States decided *St. Amant* v. *Thompson,* 36 L.W. 4333. There the Louisiana Supreme Court had affirmed an award granted a deputy sheriff in a libel action, although holding him to be a "public official" within *New York Times,* because it found sufficient evidence of actual malice to support the verdict. While overturning this decision on the grounds that "the state court misunderstood and misapplied the actual malice standard" (36 L.W. 4333), the court stated: "For purposes of this case we accept the determinations of the Louisiana courts that * * * Thompson [the deputy sheriff] was a public official". (36 L.W. 4333.) Other courts have applied this term to a variety of law enforcement officers. *Henry* v. *Collins,* 380 U.S. 356, 13 L. Ed. 2d 892, 85 S. Ct. 992, (Chief of Police); *Pape* v. *Time* (7th Cir. 1965), 354 F.2d 558, *cert* denied, 384 U.S. 909, 16 L. Ed. 2d 361, 86 S. Ct. 1339 (deputy chief of detectives); *Gilligan* v. *King,* 264 N.Y.S. 2nd 309 (police lieutenant).

It is our opinion that the plaintiff is within the "public

official" classification. Although as a patrolman he is "the lowest in rank of police officials" and would have slight voice in setting departmental policies, his duties are peculiarly "governmental" in character and highly charged with the public interest. It is indisputable that law enforcement is a primary function of local government and that the public has a far greater interest in the qualifications and conduct of law enforcement officers, even at, and perhaps especially at, an "on the street" level than in the qualifications and conduct of other comparably low-ranking government employees performing more proprietary functions. The abuse of a patrolman's office can have great potentiality for social harm; hence, public discussion and public criticism directed towards the performance of that office cannot constitutionally be inhibited by threat of prosecution under State libel laws.

Accordingly, plaintiff's action is barred under the rule in *New York Times* unless he can satisfy constitutional standards by showing that the defendants' publication was motivated by "actual malice" as defined in that case. The additional question is whether the amended complaint sufficiently alleged the existence of actual malice, within Illinois pleading standards, to survive defendants' motion for summary judgment.

Defendants contended on oral argument that this question is controlled by our recent decision in *Arlington Heights National Bank* v. *Arlington Heights Federal Savings and Loan Ass'n*, 37 Ill.2d 546. That case involved an attack on a complaint for failure to state a cause of action where a necessary element of the action was actual malice on the part of the defendants. It was held at pp. 551, 552: "A further requirement of a legally sufficient complaint is that it set forth factual allegations from which actual malice may reasonably be said to exist as opposed to the bare assertion of actual malice. [Citation.] * * * In our opinion, malice is not sufficiently pleaded

by simply repeating that epithet without any facts tending to support that conclusion and we therefore find plaintiff's amended complaint insufficient in law."

The amended complaint did considerably more than repeat the epithet of "actual malice". As previously noted, it charged that "the defendants, and each of them, intending to injure the plaintiff's good name and to injure him in his livelihood, with knowledge that it was false and with reckless disregard to whether it was false or not, maliciously composed, published and caused to be published in their said newspaper, an article containing false, scandalous and malicious libels concerning the Plaintiff." It also incorporated by reference the article in question which on its face, gives rise to factual inferences tending to support the charge of actual malice. In contrast, the complaint in *Arlington Heights National Bank* set forth facts which tended to negative such an intent. (37 Ill.2d at 552.) Therefore, we hold that the amended complaint was legally sufficient and created triable issues of fact.

The judgment of the appellate court is affirmed.

*Judgment affirmed.*