REVEREND L. R. DAVIS, Plaintiff-Appellant, *v.* KEYSTONE PRINTING SERVICE, INC., *et al.*, Defendants-Appellees.

Second District   No. 82—212

Opinion filed December 30, 1982.

428

Michael J. Cummings, of Waukegan, for appellant.

Murray Conzelman, of Conzelman, Schultz, Snarski & Mullen, of Waukegan, for appellees.

JUSTICE UNVERZAGT delivered the opinion of the court:

Plaintiff, Reverend L. R. Davis, filed an action for libel against the defendants, the *News-Sun* and reporter Adrienne Drell, arising from a series of newspaper articles published by the defendants. Defendants' motion to strike and dismiss was granted by the trial court, and plaintiff appeals that order.

The complaint alleged that the plaintiff, a citizen of Lake County and founder of a nonprofit religious organization known as Christian Fellowship, Inc., was a person of good name and reputation held in high esteem by his acquaintances in personal, religious, and business capacities and by the general public; that Adrienne Drell was a reporter for and agent of the *News-Sun* and was separately and jointly responsible for the decision to publish the articles complained of; that the *News-Sun* was in the business of publishing and distributing newspapers to the general public; and that a series of articles appeared in the *News-Sun* which contained false statements injurious to plaintiff's good name and reputation in his individual capacity and as founder and director of Christian Fellowship, Inc.

In eight separate counts, one for each day on which the articles were published, the plaintiff set out allegedly defamatory statements from each of the articles, which appeared on the front page of and elsewhere within the *News-Sun* from February 1980 through December 1980. The first articles reported, among other things, that "[s]everal disillusioned former members of the Good News Singers describe L. R. Davis, the leader of the widely known, Waukegan-based religious organization, as a manipulator who: Lured some of them into

homosexual encounters; Promoted illegal absences from the U. S. Navy; Encouraged large personal contributions—$100,000 in one family's case." The subsequent articles further detailed these charges. They stated that plaintiff "seduced male members of his group against their will"; referred to the plaintiff as "the latest example of questionable leadership that has been accepted without question because he acted in the name of Christianity"; revealed an investigation by the U. S. Navy arising out of the *News-Sun* disclosure; said that the plaintiff broke "federal laws by encouraging Navy personnel to take illegal absences"; reported that the plaintiff left the United Pentecostal Church in 1968 "in a wave of controversy and criticism for his alleged homosexual advances to young men"; and stated that Lake County court officials were no longer sending young men on probation to plaintiff for supervision after complaints that plaintiff "pressured the youths into homosexual relationships by suggesting noncompliance with his will could mean revocation of their probationary sentences and prison."

The complaint further alleged that the enumerated statements from the articles were made in full knowledge that they were untrue or in a reckless disregard of their truth or falsity and for the purpose of injuring plaintiff in his good name as a private person and as founder and director of Christian Fellowship, Inc.; that there was no attempt to verify the falsity of the defamatory statements; that defendants had a duty not to publish false statements against plaintiff; that they maliciously and intentionally published false statements for distribution to the general public for the purpose of harming plaintiff's good name and reputation both individually and as founder and director of Christian Fellowship, Inc.; and that as a direct and proximate result of the publication of the defamatory statements plaintiff was injured personally and as founder and director of Christian Fellowship, Inc., and was seeking damages and punitive damages. Eight exhibits consisting of the newspaper articles in question were attached to the complaint.

Defendants filed a motion to strike and dismiss. The motion stated that it appeared from the complaint and its attached articles that all of the articles were reports of governmental proceedings and therefore subject to a qualified privilege and that the complaint did not make any allegations of fact showing that the articles were motivated solely by actual malice so as to defeat the privilege; that the complaint did not make any allegations of fact showing actual malice; that the fair comment rule should apply, requiring that the articles be read without conclusions as to actual malice; that the fair construction

rule should apply, under which the articles could be fairly read and construed not to be libelous; that the articles contained expressions of opinions which could not be libelous as a matter of law; that to permit the filing of this action and recovery of damages would violate the first amendment to the Constitution of the United States and section 4, article I of the Constitution of the State of Illinois of 1970; that it appeared from the articles that they were published for good motives and for justifiable ends and were therefore protected under the same article; that plaintiff was a public figure who must allege facts showing actual malice, that actual malice would not be inferred, and that the complaint did not allege any facts showing actual malice; and that the complaint did not allege facts showing actual damage suffered by the plaintiff.

The trial court held that the statements printed by defendants were libelous *per se* and incapable of innocent construction. However, the trial court found that defendants had a qualified privilege in that plaintiff was a public figure who had injected himself into the public arena far beyond his small ministry. The trial court concluded that plaintiff had failed to allege actual malice on the part of defendants in that there were no specific factual allegations in the complaint as to how or why defendants should have known or knew the statements were false. A judgment was entered granting defendants' motion and dismissing the complaint.

On appeal, the plaintiff asserts that at the time the newspaper articles at issue were published he was a private individual and not a public figure but that his complaint did properly allege malice. The defendants disagree on both points. They also state that the plaintiff took the position in the trial court and in his docketing statement that he had not alleged actual malice and argue that he is improperly changing his position on appeal.

The issues before this court are (1) whether the trial court erred in granting the defendants' motion to dismiss and (2) whether plaintiff has raised matter on appeal inconsistent with his earlier position.

■ The defendants' "Motion to Strike and Dismiss" did not designate the section of the Civil Practice Act under which they were proceeding. Proper practice dictates that a party specifically designate whether his motion to dismiss is governed by section 45 (Ill. Rev. Stat. 1979, ch. 110, par. 45), recodified as section 2—615 of the Code of Civil Procedure (Ill. Rev. Stat. 1981, ch. 110, par. 2—615), or section 48 (Ill. Rev. Stat. 1979, ch. 110, par. 48), recodified as section 2—619 of the Code of Civil Procedure (Ill. Rev. Stat. 1981, ch. 110, par. 2—619), since the requirements and consequences of the sections are

considerably different. (*Davis v. Weiskopf* (1982), 108 Ill. App. 3d 505, 508-10; *Galayda v. Penman* (1980), 80 Ill. App. 3d 423, 424-25, *appeal denied* (1980), 81 Ill. 2d 584.) However, when a motion is not properly labeled the court will look at the substance of the motion to determine which section governs. (See *Lerner v. Zipperman* (1982), 104 Ill. App. 3d 1098.) The major distinction is that section 48 allows for the assertion of affirmative matter that does not appear on the face of the complaint. *Hayna v. Arby's, Inc.* (1981), 99 Ill. App. 3d 700, 710; *Szczurek v. City of Park Ridge* (1981), 97 Ill. App. 3d 649, 655, *appeal denied* (1981), 85 Ill. 2d 575.

In view of the issues raised in defendants' motion to dismiss, *i.e.*, qualified privileges to report governmental proceedings and to report about public figures, constitutional protections, the fair-comment rule, and the innocent-construction rule, it appears that the motion was filed pursuant to section 48(1)(i). That section clearly includes affirmative defenses. (*Millsaps v. Bankers Life Co.* (1976), 35 Ill. App. 3d 735, 742, *appeal denied* (1976), 63 Ill. 2d 552.) In the instant case, the defendants could not challenge the plaintiff's actual malice allegation as insufficient to state a cause of action until they properly asserted the qualified privileges, to which plaintiff's alleged status as a public figure was relevant, via section 48. Thus, this appears to be a hybrid motion.

■ The trial court's ruling that the plaintiff was a public figure was based on the plaintiff's complaint, to which allegedly defamatory newspaper articles were attached, defendants' motion to strike and dismiss, and the briefs submitted by the parties. There was no evidentiary hearing, nor did the defendants support their motion with affidavits. All pleadings were unverified. The factors described by the trial court in its memorandum regarding the plaintiff's status could not have been extracted from the body of the plaintiff's complaint. Rather, the trial court apparently relied on information reported in the attached newspaper articles. The question that arises under these circumstances is the propriety of the trial court's consideration of information and articles that were laced with statements charged to be defamatory, or whether there was a competent factual presentation available from which the trial court could properly have reached its decision.

Section 48 requires a party to submit affidavits in support of a motion to dismiss if the grounds for dismissal do not appear on the face of the pleading. It is therefore necessary to delineate what the "face of the pleading" comprises. Section 36 of the Civil Practice Act (Ill. Rev. Stat. 1979, ch. 110, par. 36), recodified as section 2—606 of

the Code of Civil Procedure (Ill. Rev. Stat. 1981, ch. 110, par. 2—606), states:

> "Exhibits. If a claim or defense is founded upon a written instrument, a copy thereof, or of so much of the same as is relevant, must be attached to the pleading as an exhibit or recited therein, unless the pleader attaches to his pleading an affidavit stating facts showing that the instrument is not accessible to him. In pleading any written instrument a copy thereof may be attached to the pleading as an exhibit. In either case the exhibit constitutes a part of the pleading for all purposes."

Since plaintiff's claim was founded upon the newspaper articles, the plaintiff was required to attach copies of the articles to his complaint. The defendants' motion to dismiss relied upon the articles to show that the plaintiff was a public figure, and such a finding was basic to the court's dismissal of the complaint.

The case law reveals that exhibits attached to a complaint must be considered to be an integral part of the complaint (*Fowley v. Braden* (1954), 4 Ill. 2d 355, 360; *Theodosakis v. Austin Bank* (1981), 93 Ill. App. 3d 634, 637), and become a part thereof for all purposes. (*First National Bank v. Minke* (1981), 99 Ill. App. 3d 10, 13; *Sharkey v. Snow* (1973), 13 Ill. App. 3d 448, 451.) Facts stated in such exhibits are considered the same as having been alleged in the complaint. *Ford v. University of Illinois Board of Trustees* (1977), 55 Ill. App. 3d 744, 747.

Although these cases buttress the provision of section 36 that exhibits constitute a part of pleadings for all purposes, the present situation presents a problem. The general rule in deciding a motion to dismiss is that it admits all well-pleaded facts, as well as reasonable inferences that can be drawn (*Hayna v. Arby's, Inc.* (1981), 99 Ill. App. 3d 700, 709; *Central States, Southeast & Southwest Areas Pension Fund v. Gaylur Products, Inc.* (1978), 66 Ill. App. 3d 709, 713), but does not admit conclusions of law or conclusions of fact not supported by allegations of specific facts. (*Szczurek v. City of Park Ridge* (1981), 97 Ill. App. 3d 649, 655, *appeal denied* (1981), 85 Ill. 2d 575; *Meyer v. Murray* (1979), 70 Ill. App. 3d 106, 114.) In a libel case, the defamatory literature, which must be attached, necessarily contains statements whose accuracy is being challenged. It would be ludicrous to suggest that articles attached to a libel plaintiff's complaint be considered for their truth on a motion to dismiss, where the court must view as true all well-pleaded facts in the complaint, one of which is that certain statements in the articles are false. Since the defamatory statements are alleged to be false, they would not be taken as true in

a motion to dismiss because there is no corresponding contradiction in the articles expressly stating that they are true. However, only the allegedly defamatory statements are cited as false. The remainder of the articles are also part of the exhibits. Thus, a court could consider only those uncomplained of statements in the articles. However, to do so would lend credence to portions of the same report that allegedly was not only injurious to a plaintiff's reputation but also false or inaccurate and published either negligently or maliciously. This problem is compounded in the instant case by the fact that, not only did the trial court accept information contained in the articles as true, but it relied solely on that source of information, since no other was offered.

It would be difficult, in light of the case law and the language of section 36, to say that the nondefamatory statements in an exhibit containing allegedly defamatory material should not be considered at all for their truth in deciding a motion to dismiss. However, a defendant has the burden of proving the affirmative matter which he asserts (*Meyer v. Murray* (1979), 70 Ill. App. 3d 106, 114; *Stockton v. Mendoza* (1977), 46 Ill. App. 3d 108, 110), and section 48 expressly requires affidavits where grounds do not appear on the face of a pleading. Defendants here simply relied on the complaint and exhibits to support their assertion that plaintiff was a public figure. To finally dismiss a party's action strictly on the basis of this caliber of information, when there is no corroborative evidence, would be error. The exhibits alone were not a proper source of information to consider in deciding the issues in defendants' motion to dismiss.

The next question is whether the trial court was correct in its assessment of plaintiff as a public figure, based on the information at hand. The trial court accepted the plaintiff's allegation that he was a minister of a small congregation that encompassed the Waukegan and North Chicago area but found that plaintiff had injected himself to a far greater degree into the Lake County area in that his not-for-profit religious organization was a store-front operation, giving him and the public ample access to each other; he was involved with the Lake County judicial system in helping to supervise persons on probation, which was "heightened" by his location near the courthouse; and he was in charge of a singing group that performed small concerts throughout the midwest. The trial court concluded that, since how plaintiff acted and presented himself was important to those people who were or would be in contact with him, he was a public figure, and he was deemed "a public figure for all purposes, and if not, at least a limited public figure with respect to his conduct and its effect on his organization."

A review of the case law of defamation, in order to determine the proper standards to apply, starts with *New York Times Co. v. Sullivan* (1964), 376 U.S. 254, 11 L. Ed. 2d 686, 84 S. Ct. 710. The United States Supreme Court enunciated the rule, required by constitutional guarantees of the first amendment, that a public official may recover damages for a defamatory falsehood relating to official misconduct only if he proves that the statement was made with actual malice. (376 U.S. 254, 279-80, 11 L. Ed. 2d 686, 706, 84 S. Ct. 710, 726.) This requirement of proof of actual malice was extended to suits for defamation brought by persons who were in some sense "public figures" in *Curtis Publishing Co. v. Butts* (1967), 388 U.S. 130, 18 L. Ed. 2d 1094, 87 S. Ct. 1975. Then, in *Gertz v. Robert Welch, Inc.* (1974), 418 U.S. 323, 41 L. Ed. 2d 789, 94 S. Ct. 2997, the Supreme Court held that, at least where the substance of defamatory statement makes substantial damage to reputation apparent and so long as they do not impose liability without fault, the States may define the appropriate standard of liability for a publisher or broadcaster of defamatory falsehood injurious to a private individual. (418 U.S. 323, 347, 41 L. Ed. 2d 789, 809, 94 S. Ct. 2997, 3010.) In line with *Gertz*, the Illinois standard for defamation of private individuals was announced in *Troman v. Wood* (1975), 62 Ill. 2d 184, which replaced the former standard of strict liability for publishers of a defamatory falsehood. The court held:

> "[I]n a suit brought by a private individual to recover actual damages for a defamatory publication whose substantial danger to reputation is apparent, recovery may be had upon proof that the publication was false, and that the defendant either knew it to be false, or, believing it to be true, lacked reasonable grounds for that belief. We hold further that negligence may form the basis of liability regardless of whether or not the publication in question related to a matter of public or general interest. Our holding in the present case is, of course, not intended to remove any of the absolute or qualified privileges which have heretofore been recognized in this State to the extent that the facts may warrant their application." (62 Ill. 2d 184, 198.)

In *Johnson v. Board of Junior College District No. 508* (1975), 31 Ill. App. 3d 270, *appeal denied* (1975), 61 Ill. 2d 598, college professors who were actively involved in a textbook controversy, who were not public figures for all purposes, were deemed limited public figures within the college community, which was the same community served by the publication. The plaintiff in *Kilbane v. Sabonjian* (1976), 38 Ill.

App. 3d 172, was also deemed a public figure. He had caused four advertisements that criticized the defendant mayor to be published in a newspaper during an election campaign, and the defendant then criticized him via radio. The plaintiff was found to have served the community in various capacities, to have sought to influence opinion, and to have thrust himself into a debate on issues of the general public's interest, thereby inviting comment and criticism. (38 Ill. App. 3d 172, 177.) In *Korbar v. Hite* (1976), 43 Ill. App. 3d 636, *cert. denied* (1977), 434 U.S. 837, 54 L. Ed. 2d 98, 98 S. Ct. 127, the president of a credit union, complaining of an article published in a union newspaper concerning a matter of general interest to the membership, was found to be a limited public figure. Looking at the nature and extent of his participation in the controversy, the court concluded that plaintiff thrust himself into the forefront of the action by his election as president and invited comment on his official conduct. (43 Ill. App. 3d 636, 642.) In *Newell v. Field Enterprises, Inc.* (1980), 91 Ill. App. 3d 735, the plaintiff, who was a defendant in a wrongful death action the complaint to which was reported in the *Chicago Daily News* so as allegedly to defame plaintiff, was deemed a private individual. Not a public figure for all purposes, he did not initiate the wrongful death action and had neither received a summons nor filed an answer to the complaint at the time the article was published and so did not inject himself into a public controversy. The court rejected the argument that the matter was of public interest because it involved the death of a human being in a fire. (91 Ill. App. 3d 735, 754.) In *McCutcheon v. Moran* (1981), 99 Ill. App. 3d 421, the plaintiff was a private individual in that a teacher or principal's relationship with the conduct of government is too remote to justify exposure to a qualifiedly privileged assault upon reputation, and she did not attain public figure status merely because she was a teacher-principal in a public school system supported with public funds. (99 Ill. App. 3d 421, 424-25.) The alleged slander occurred when another school employee falsely accused her of a battery and brought criminal charges and testified at a board of education committee hearing reviewing her.

In the recent case of *Colson v. Stieg* (1982), 89 Ill. 2d 205, the *New York Times* qualified privilege was applied against an assistant professor whose professional ability was impeached, amounting to slander, at a committee meeting concerning his application for tenure and promotion. Our supreme court noted that to some extent it had extended the constitutional privilege enunciated in *New York Times* beyond public figures and public employees to matters of public concern, citing *Farnsworth v. Tribune Co.* (1969), 43 Ill. 2d 286. The

court decided that it "need not in this case decide whether plaintiff was a public figure or public official, because the facts justify following *Farnsworth* and holding that this case clearly qualifies under the *Butts* test as a subject about which information is needed or appropriate to enable the members of the committee to cope with the issues confronting them." (89 Ill. 2d 205, 213.) The court concluded that "[i]n light of the limited scope of the publication and the interest and concern of the group to whom the statement was published, we find that the first amendment privilege of *New York Times* must be applied to the statement made by the defendant." 89 Ill. 2d 205, 213.

These cases staunchly protect first amendment rights; they also illustrate the boundaries of those rights. The United States Supreme Court has retreated from the "public concern" approach and exercised restraint in finding persons to be even limited public figures. Although our supreme court has recently indicated that the "public concern" approach is still viable in our State, it is clear that such factors as the scope of the publication and a plaintiff's access to rebuttal are important considerations. (See *Colson v. Stieg* (1982), 89 Ill. 2d 205, 214.) Recent Illinois cases which have determined that a public official/public figure/matter of public concern is present show that either the plaintiff has been extensively involved in public matters and in the public eye or the publication itself has been limited to a particular audience relevant to the subject matter.

The newspaper exhibits in the instant case show that plaintiff was the president of Christian Fellowship, Inc., a tax-exempt organization, which sponsored a servicemen's center and offered help and refuge to those with problems such as drug addiction, alcoholism, and prostitution. He talked to sailors on the "strip" on Sheridan Road in North Chicago. He was the leader of the Waukegan-based Good News Singers, who "have appeared on nationwide TV and radio, sung on the steps of the capitol in Washington, D.C., been photographed with politicians and celebrities and entertained throughout the country for civic and veterans' organizations." A two-year-old picture of the group was printed that was taken in the House of Representatives in Washington, D.C. Plaintiff had been involved in a controversy 13 years earlier in Arkansas where he held a "general" certificate to preach for the United Pentecostal Church and was dropped following criticism for alleged homosexual advances to young men. He was contemplating a geographic expansion of his organization to two other towns with military bases.

He had participated the previous summer, until he was barred following complaints of sexual advances, in a probation program as a su-

pervisor. The newspaper articles also characterized plaintiff's organization as "widely known" and "well known," but these were *conclusions*.

On this basis, the trial court found plaintiff to be a public figure for all or at least limited purposes. Plaintiff must have achieved pervasive fame and notoriety to become a public figure for all purposes and in all contexts. (*Gertz v. Robert Welch, Inc.* (1974), 418 U.S. 323, 351, 41 L. Ed. 2d 789, 812, 94 S. Ct. 2997, 3013.) The defendants in their brief urge that plaintiff achieved this status through his singing group and by working with the judicial system in counseling persons on probation. However, it is difficult to tell from the articles the extent of the Good News Singers' renown, as there is no information detailing how recently they received media coverage, how often, how much, or the size or location of their audience. Even if the Good News Singers were indeed generally known, it would not necessarily follow that plaintiff was equally well known. As to plaintiff's role as a counselor, it ended in the summer of 1979, and the first article was published in February 1980. The focal point in assessing an individual's status is at the time just prior to the defamatory publication, since a defendant cannot construct his own defense by making a plaintiff a public figure through the same articles that defame him. (See *Hutchinson v. Proxmire* (1979), 443 U.S. 111, 135, 61 L. Ed. 2d 411, 431, 99 S. Ct. 2675, 2688.) There is no indication that plaintiff's involvement with the court's probation system was even published prior to the series of articles at issue here, nor that plaintiff achieved or sustained general notoriety as the result of that involvement. There is some information regarding plaintiff's professional role in the community, but the articles do not reflect the number of people with whom he deals or the extent he or his church is publicly known and so do not conclusively establish a "pervasive fame or notoriety."

To qualify as a limited public figure for a particular issue, plaintiff must have injected himself or have been drawn into the particular public controversy. (*Gertz v. Robert Welch, Inc.* (1974), 418 U.S. 323, 351, 41 L. Ed. 2d 789, 812, 94 S. Ct. 2997, 3013.) Defendants argue that plaintiff "thrust" himself into the area of religious counseling. This is not a case where there was in existence a public issue in which plaintiff became involved and attempted to influence public opinion. There was no public controversy prior to the articles. The question whether plaintiff injected himself into or was drawn into this controversy is not applicable, since plaintiff was an inherent part of it. In this particular case it may be more appropriate to evaluate whether this was a matter of public concern sufficient to invoke the

constitutional privilege. Whether or not plaintiff was a homosexual, although it might be of public interest, is certainly not the sort of subject contemplated. (See *Time, Inc. v. Firestone* (1976), 424 U.S. 448, 47 L. Ed. 2d 154, 96 S. Ct. 958.) However, whether plaintiff was manipulating young Naval recruits into homosexual relationships against their wills under the guise of religious counseling might be such a matter, as might the tax fraud issue. However, the cases indicate that other factors also be considered before the *New York Times* privilege is applied. As we noted, many of the cases concerned quite limited publications to specific groups to whom receipt of the information was important. Here, the articles were disseminated to the general public in a county-wide newspaper and were not restricted to an audience that would have been particularly appropriate to the subject matter, such as Naval recruits or the Internal Revenue Service or church members. The plaintiff contends that the articles went to areas of the city and to people who had never even heard of him. Another problem with characterizing this as a matter of public concern is that such a conclusion under these circumstances presupposes that plaintiff *was* luring Naval recruits into homosexual relationships against their will, which he has denied and which denial is admitted from the motion to dismiss where defendants have presented no contrary evidence. This is distinguishable from *Farnsworth v. Tribune Co.* (1969), 43 Ill. 2d 286, where plaintiff was a doctor who by profession dealt with human ills, which was the subject matter of the public concern. If religious counseling itself were deemed to be the matter of public concern at issue, as the defendants' brief proposes, then plaintiff's role would be analogous to that of the doctor in *Farnsworth*, whose professional activities also were libeled in a newspaper.

Defendants argue that "ills of the spirit" are as vital a matter of public concern as are medical ills. However, the medical profession is governed by uniform standards applicable to all doctors, whereas religious practices vary widely among different denominations, and even an individual's choice of religion is highly personal. The question is what burden a plaintiff should have in proving his case if such reports are indeed false, and for a plaintiff to have to prove actual malice there must be an important enough public concern to invoke constitutional protection on behalf of the defendants.

In addition to characterizing a matter as one of public concern, a plaintiff's access to the media for purpose of refuting charges against him is important. In *Colson v. Stieg* (1982), 89 Ill. 2d 205, where the published information was necessary for a committee's decision and therefore privileged, the court also cautioned:

"If the defendant in our case would have published the statement in question to the public in general, it is possible that the plaintiff would not have had sufficient access to the channels of communication to overcome or offset the damaging effect of defendant's statement. We make no assessment of the propriety of the use of the *New York Times* privilege in such a situation." 89 Ill. 2d 205, 214.

The narrow extent of the publication and the plaintiff's opportunity to answer were important factors in invoking the *New York Times* privilege. Following *Colson, American Pet Motels, Inc. v. Chicago Veterinary Medical Association* (1982), 106 Ill. App. 3d 626, was decided, which involved a libel published in a veterinary association newsletter for distribution among its members. The court found that its plaintiff had no opportunity to communicate with the recipients of the alleged defamatory statements and declined to extend the constitutional privilege in such circumstances, in view of *Colson*.

In the present case, although defendants argue that plaintiff had and exercised an opportunity for self-help, the newspaper exhibits do not reflect this. The following are the only references to rebuttal to be found in all of the articles: "Davis, in a taped interview with the *News-Sun* earlier this week, vehemently denied luring male members of the group into homosexual encounters." "Davis *** has denied he lured the men into the homosexual affairs or encouraged them to take illegal absences ***." "Davis admitted in the *News-Sun* he allowed recruits he knew were 'UA' or on illegal absences to stay at the hotel 'until they get their heads on straight' but said he encouraged them to return to the Navy." "In an earlier interview with the *News-Sun*, Davis said he received no salary and contended the Fellowship is in debt despite $100,000 in contributions annually. He denied members turn over their paychecks to the group, although a *News-Sun* examination of records at two companies where former members worked showed returned paychecks had been stamped 'Christian Fellowship, Inc.,' and signed by Davis." Given the numerous articles published, the negative context of the articles in which these statements appear, and the paucity of these exculpatory statements, they hardly amount to effective rebuttal. Plaintiff also argues that defendant Drell refused his invitation to come to the church and examine their records and interview him and other members, nor was plaintiff contacted prior to publication of the articles. This too indicates limited access to rebuttal through the media.

■ In a motion to dismiss, a defendant has the burden of proving the affirmative matter he raises. Here, defendants chose to rely on

the complaint and exhibits incorporated therein and did not present supporting affidavits. The issue here is close, but considering the dearth of detailed information in the articles, the extent of the publication, plaintiff's inability to rebut the charges effectively through the media, and the singular source of the information, it was error for the trial court to apply the *New York Times* privilege, based on the information before it.

■ Where the *New York Times* privilege is applicable, a plaintiff must plead and prove actual malice in order to maintain an action for defamation. (*New York Times Co. v. Sullivan* (1964), 376 U.S. 254, 279-80, 11 L. Ed. 2d 686, 706, 84 S. Ct. 710, 726; *Colson v. Stieg* (1982), 89 Ill. 2d 205, 214.) Although we have determined that plaintiff was not in some sense a public figure nor was there a sufficient matter of public concern to invoke the privilege for a defendant, we must still decide whether the plaintiff properly alleged actual malice in his complaint, since a sufficient allegation of actual malice is necessary for plaintiff's request for punitive damages to stand. (*Gertz v. Robert Welch, Inc.* (1974), 418 U.S. 323, 349, 41 L. Ed. 2d 789, 810, 94 S. Ct. 2997, 3011.) Bare allegations of actual malice in a complaint are not enough; rather, conclusions of malice and intent must be clothed with factual allegations from which the actual malice might reasonably be said to exist. *Arlington Heights National Bank v. Arlington Heights Federal Savings & Loan Association* (1967), 37 Ill. 2d 546, 551.

The pertinent allegations in plaintiff's complaint that must be examined in analyzing whether actual malice was sufficiently pleaded are as follows:

"7. That said newspaper articles contained a number of false statements injurious to Reverend L. R. DAVIS' good name and reputation in his individual capacity and injurious to his good name and reputation as founder and director of Christian Fellowship, Inc., said statements are as follows:
* * *
8. That the things and matters stated above and published by ADRIENNE DRELL and THE NEWS-SUN were made in full knowledge that they were untrue or in a reckless disregard of their truth or falsity and for the purpose of injuring Reverend L. R. DAVIS in his good name as a private person and as founder and Director of Christian Fellowship, Inc.

9. That neither ADRIENNE DRELL nor THE NEWS-SUN attempted to verify the falsity of the defamatory statements but in complete and reckless disregard of the truth or falsity of

those statements the Defendants ADRIENNE DRELL and THE NEWS-SUN caused the statements to be published.

10. That the Defendants and each of them had a duty not to publish such false statements against Reverend L. R. DAVIS.

11. That the Defendants and each of them maliciously and intentionally caused the publication of false statements to be printed in THE NEWS-SUN for distribution to the general public for the purpose of harming Reverend L. R. DAVIS' good name and reputation both individually and as founder and Director of Christian Fellowship, Inc."

These allegations were all repeated in each count in the complaint.

In *Colson v. Stieg* (1982), 89 Ill. 2d 205, 215, our supreme court found the following allegations sufficient to allege actual malice:

" 'Said statement was made by Defendant knowing it to be false, without reasonable grounds for believing it to be true, maliciously, wilfully, intentionally and without reasonable justification or excuse with the intention of destroying Plaintiff's personal and professional reputation, causing Plaintiff to be denied tenure, to be terminated from employment with Northern Illinois University effective May, 1979 and interfering with his ability to be suitably employed in the future. Said statement caused Plaintiff extensive mental and physical anguish and financial loss.' "

The court acknowledged that the allegation was replete with conclusions and not facts and by consolidating so much in one sentence did not strictly comply with the Civil Practice Act, it noted the command of the Civil Practice Act that the act "be liberally construed, to the end that controversies may be speedily and finally determined according to the substantive rights of the parties." (Ill. Rev. Stat. 1977, ch. 110, par. 4, recodified as Ill. Rev. Stat. 1981, ch. 110, par. 1—106.) The court found the allegation that the statement was made " 'knowing it to be false' " and " 'maliciously, wilfully and intentionally' " to be sufficient to allege actual malice, though not a model. The court cited *Coursey v. Greater Niles Township Publishing Corp.* (1968), 40 Ill. 2d 257, 266, for the proposition that it is sufficient to allege "that the facts asserted were false and that the statement was made knowing it to be false." 89 Ill. 2d 205, 216.

■ In the instant cause, plaintiff alleged that the statements were made maliciously and intentionally in full knowledge of their falsity or in complete and reckless disregard of their truth or falsity, for the purpose of injuring plaintiff in his good name privately and professionally, in breach of a duty not to publish such false statements,

and without attempting to verify the falsity. This includes the approved language and more. Although the defendants argue that the articles themselves negate actual malice in that they are accurate reports of witnesses' accounts, that is a factual issue that is not clear at this stage. The articles tell only one side of the story, and they rely on accounts of "disgruntled" former members. A reviewing court should interpret the facts alleged in the complaint in the light most favorable to the plaintiff, and a complaint should not be dismissed unless the pleading discloses that no set of facts could be proved that would entitle a plaintiff to relief. (*Theodosakis v. Austin Bank* (1981), 93 Ill. App. 3d 634, 637.) Pleadings shall be liberally construed with a view of doing substantial justice between the parties. (Ill. Rev. Stat. 1981, ch. 110, par. 2—603(c).) Although plaintiff might be unable to *prove* actual malice, it appears that he did *plead* actual malice sufficiently to state a cause of action and to support a request for punitive damages.

In oral argument, defendants contend that certain facts were admitted by the plaintiff in his trial brief and, therefore, are admissions now binding on the plaintiff. However, these "facts" were not briefed by the defendants and are therefore waived. 87 Ill. 2d R. 341(e)(7).

Finally the defendants argue that the plaintiff took the position in the trial court that he had not alleged actual malice and argue that the plaintiff may not try the case on one theory in the trial court and another at the appellate level. However, the record does not disclose any expression by the plaintiff that he did not allege actual malice. He did argue that he was a private individual and was not required to allege actual malice, but that is not an acknowledgment that he did not in fact allege it. As the plaintiff asserts in his brief, an allegation of actual malice was necessary to support his request for punitive damages. Even if he was confident that he had alleged actual malice, the plaintiff would still quite logically have argued his position that he was a private individual, as that status carries a different standard of proof (*i.e.*, negligence) for recovery of actual damages suffered.

The defendants also argue that the plaintiff was bound by an entry in his docketing statement that "Plaintiff did not allege actual malice on the part of Defendants." However, the defendants took this statement entirely out of context. The full entry in the docketing statement reads:

"BRIEF DESCRIPTION OF THE NATURE OF THE CASE AND THE RESULT IN THE TRIAL COURT:

Plaintiff filed a complaint against Defendants alleging that a series of articles filed in the *News-Sun* contained falsehoods that injured him. Plaintiff did not allege actual malice on the

part of the Defendants."

It seems obvious that the first sentence is the "brief description of the nature of the case" and the second is "the result in the trial court," particularly since the plaintiff did not below or on appeal take the position that he had not alleged actual malice.

For the foregoing reasons, the trial court's dismissal of the plaintiff's complaint is reversed and the cause is remanded for further proceedings not inconsistent with this opinion.

Reversed and remanded.

HOPF and NASH, JJ., concur.