JAMES R. SWEENEY, Plaintiff-Appellant, v. SENGSTACKE ENTER-PRISES, INC., *et al.*, Defendants-Appellees.

First District (3rd Division)   No. 1—88—1839

Opinion filed March 15, 1989.

John G. Phillips & Associates, of Chicago (John F. Klebba, of counsel), for appellant.

Parrillo, Weiss & Moss, of Chicago (Michael J. O'Halloran and Keely Truax, of counsel), for appellees.

JUSTICE McNAMARA delivered the opinion of the court:
Plaintiff, James R. Sweeney, sued defendants Sengstacke Enter-

prises, Inc., d/b/a Chicago Defender, and Chinta Strausberg, among others, for defamation, invasion of privacy and intentional infliction of emotional distress. The trial court dismissed all three counts as to these defendants pursuant to section 2—615 of the Code of Civil Procedure (Ill. Rev. Stat. 1987, ch. 110, par. 2—615). Plaintiff appeals only from the dismissal of the defamation count. Defendants Curtis Jones and his son Rodney Jones are not parties to this appeal.

On January 21, 1987, the Chicago Defender published an article which read, in pertinent part:

"OPS probes student charge
policeman threatened mayor

by Chinta Strausberg

The Office of Professional Standards (OPS) is investigating charges with a white officer, who arrested the 16-year-old son of a Black City Hall policeman, allegedly threaten[ed] the life of Mayor Harold Washington.

\* \* \*

In an interview with the *Chicago Defender*, City Hall officer Curtis Jones, 48, who ironically is the cousin of the slain Emmett Till, then 14, who was killed August 22, 1955 in Money, Miss., by whites, has filed a formal complaint against a white colleague.

\* \* \*

'[My son] was horsing around outside of the restaurant in the park area,' Jones said. 'Sweeney told them he was under arrest and handcuffed my son. He put both of them in the car and while enroute to the 25th District, Area 5, the white officers made racial statements using (former mayoral candidate Bernard) Epton jokes.

'They told Black and white jokes,' continued Jones. 'One of them made a statement saying "We forgave Jane Byrne" then asked my son who was he for. When my son said Washington, Sweeney and his partner said: "If he (Washington) gets in, we're going to kill him. I got a friend with a helicopter, and we got a rifle with a scope and we are going to pick him off. We got grenades, too." '

An officer for 21 years, Jones said 'I try to keep that hostility out of my life.' Jones said he was sleeping in the bed next to Till when the white men 'dragged him out of the house that Saturday night. I was 17 years old then and a Crane student,' he recalled.

\* \* \*

'It was wrong what they did to my son,' Jones told the *Chicago Defender*. "They taught him to hate, and I don't like that. I always taught him not to hate anyone because of skin color,' said Jones who has over 180 honorable life-saving commendations involving Black and white citizens."

Plaintiff's complaint alleges that the statements were false and that the article suggested plaintiff was engaged in criminal activity and was unfit to be a police officer. The trial court dismissed the action under the innocent construction rule.

■■ We are confronted with only the most preliminary and threshold question of whether the complaint is legally sufficient to entitle plaintiff to proceed on the merits of his claim. The facts alleged in the complaint should be interpreted in a light most favorable to plaintiff, and the complaint should not be dismissed unless the pleading discloses that no set of facts could be proved that would entitle plaintiff to relief. *Davis v. Keystone Printing Service, Inc.* (1982), 111 Ill. App. 3d 427, 444 N.E.2d 253.

■■ A statement is libelous *per se* if it imputes to plaintiff the commission of a crime, if it imputes the inability to perform or want of integrity in the discharge of the duties of office or employment, or if it prejudices him in his profession or trade. (*Owens v. CBS, Inc.* (1988), 173 Ill. App. 3d 977, 527 N.E.2d 1296; *Makis v. Area Publications Corp.* (1979), 77 Ill. App. 3d 452, 395 N.E.2d 1185.) Thus, an allegation that a statement falsely accuses a person of committing a crime is sufficient to support a defamation action. *Cartwright v. Garrison* (1983), 113 Ill. App. 3d 536, 447 N.E.2d 446.

In *Owens v. CBS, Inc.*, the court upheld a judgment for plaintiff where defendant published a false charge that plaintiff had sent a letter to the White House threatening the life of the President. The court found the accusations were of criminal conduct and obviously meant to be taken literally. "No reasonable person would have viewed them as mere 'rhetorical hyperbole' or as having been intended simply in a 'loose, figurative sense.'" *Owens v. CBS, Inc.*, 173 Ill. App. 3d at 992, 527 N.E.2d at 531, quoting *Catalano v. Pechous* (1980), 83 Ill. 2d 146, 162-63, 419 N.E.2d 350, 358.

Similarly, the statements here clearly charge that plaintiff committed criminal acts in conspiring to kill a man. Defendants maintain, however, that the application of the innocent construction rule to the statements in question would require a finding that they are not actionable as a matter of law.

■■ Before a court may judge statements to be defamatory as a matter of law, they must be considered in light of the innocent con-

struction rule. (*Owen v. Carr* (1986), 113 Ill. 2d 273, 497 N.E.2d 1145.) Under the innocent construction rule, words allegedly libelous which are capable of being read innocently must be so read and declared nonactionable as a matter of law. (*Chapski v. Copley Press* (1982), 92 Ill. 2d 344, 442 N.E.2d 195; *John v. Tribune Co.* (1962), 24 Ill. 2d 437, 181 N.E.2d 105.) The meaning of a statement must be gathered not only from the words singled out as libelous but also from the context in which they are used. (*Chapski v. Copley Press*, 92 Ill. 2d 344, 442 N.E.2d 195.) Whether the innocent construction rule requires dismissal is initially a question of law. *Chapski v. Copley Press*, 92 Ill. 2d 344, 442 N.E.2d 195; *Cartwright v. Garrison*, 113 Ill. App. 3d 536, 447 N.E.2d 446.

■■ Defendants assert that the comments were merely "racial jokes about Chicago mayors and mayoral candidates." They characterize the statements as "tasteless jokes." There is, however, no innocent interpretation possible for the following published statement:

> "If he (Washington) gets in, we're going to kill him. I got a friend with a helicopter, and we got a rifle with a scope and we are going to pick him off. We got grenades too."

The statement accused plaintiff of criminal conduct and was meant to be taken literally. The statement that plaintiff had already obtained access to a helicopter, rifles with a scope to "pick off" the mayor, and grenades, is far from a "tasteless racial joke." The terms used were quite precise, adding to the credibility of the statement, and cannot be taken as something other than a suggestion that plaintiff had engaged in criminal activity. Moreover, such accusations could impute the inability of a police officer to perform or want of integrity in the discharge of his duties as a police officer and prejudice him in his profession. (See *Coursey v. Greater Niles Township Publishing Corp.* (1968), 40 Ill. 2d 257, 239 N.E.2d 837; *Weber v. Woods* (1975), 31 Ill. App. 3d 122, 334 N.E.2d 857.) An innocent reading is not plausible here, and a finding to the contrary would require a forced and strained interpretation of the published article, which the law does not permit. *Owens v. CBS, Inc.*, 173 Ill. App. 3d 977, 527 N.E.2d 1296; *Coursey v. Greater Niles Township Publishing Corp.*, 40 Ill. 2d 257, 239 N.E.2d 837.

We are unpersuaded by defendants' attempt to distinguish *Owens* on the basis that a Federal statute makes any type of threat on the President's life a crime, while "mere voicing of a threat to take the life of the mayor of Chicago" is not a criminal offense under a statute or ordinance. For words imputing the commission of a crime to be libelous *per se*, the offense need only be indictable, involve moral turpitude, and be punishable by either imprisonment or death rather than by fine.

(*Newell v. Field Enterprises, Inc.* (1980), 91 Ill. App. 3d 735, 415 N.E.2d 434.) Obviously, conspiracy to murder falls within this definition.

Defendants argue that, "[e]ven if it could be considered defamatory when read alone and out of context (which Appellees deny), the remainder of the article gives it a different, innocent meaning." The entire focus of the article is the threat by a police officer on the life of the mayor. The headline announces "policeman threatened mayor." The first sentence reports the police department's investigation of charges that an officer arresting the son of another officer made threats on the mayor's life. While the article is sprinkled with information about racial tension, the gist of the article in the Chicago newspaper is the threat by a Chicago police officer on the life of a Chicago mayor as told by the son of a second officer. The article refers to the 1955 murder of Jones' cousin and Jones' attempt to raise his children "not to hate anyone because of skin color." This background information, however, plays no more important a role than references in the article to the arrested teenager's acting as manager of a girls' basketball team, or his father's attempt to teach his children not to use drugs.

■ Finally, we must examine whether the complaint sufficiently alleges actual malice. A police officer is a public official (*Reed v. Northwestern Publishing Co.* (1988), 124 Ill. 2d 495, 530 N.E.2d 474), and thus plaintiff must prove the statements made about his official conduct were made with actual malice, *i.e.*, with knowledge that the statements were false or with reckless disregard for whether or not the statements were false. (*New York Times Co. v. Sullivan* (1964), 376 U.S. 254, 279-80, 11 L. Ed. 2d 686, 706-07, 84 S. Ct. 710, 725-26; *Reed v. Northwestern Publishing Co.*, 124 Ill. 2d 495, 530 N.E.2d 474; *Coursey v. Greater Niles Township Publishing Corp.*, 40 Ill. 2d 257, 239 N.E.2d 837.) The complaint must set forth factual allegations from which actual malice may reasonably be said to exist as opposed to the bare assertion of actual malice. (*Coursey v. Greater Niles Township Publishing Corp.*, 40 Ill. 2d 257, 239 N.E.2d 837; *Weber v. Woods*, 31 Ill. App. 3d 122, 334 N.E.2d 857.) This is true even where the statements are libelous *per se*, since a public official can still be defamed *per se*. *Colson v. Stieg* (1980), 86 Ill. App. 3d 993, 408 N.E.2d 431, *aff'd* (1982), 89 Ill. 2d 205, 433 N.E.2d 246. ·

Allegations that the statements made were false, were made with knowledge of their falsity, or were made in reckless disregard as to their truth or falsity have been held to sufficiently allege actual malice. See *Colson v. Stieg*, 86 Ill. App. 3d 993, 408 N.E.2d 431 (complaint

sufficiently alleges statement was made by defendant "knowing it to be false" and statement was made maliciously, wilfully and intentionally); *Coursey v. Greater Niles Township Publishing Corp.*, 40 Ill. 2d 257, 239 N.E.2d 837 (complaint sufficiently charges that defendants intended to injure the plaintiff police officer's name and injure his livelihood, with knowledge statement was false and with reckless disregard for falsity, they maliciously composed and published libelous article about officer's solicitation of girl); *Weber v. Woods*, 31 Ill. App. 3d 122, 334 N.E.2d 857 (complaint sufficiently alleges that defendant, knowing plaintiff was a police officer in good standing, maliciously intended to injure plaintiff and bring him into public scandal, disrepute and disgrace, by falsely and maliciously publishing statements concerning plaintiff which were false, scandalous, maliciously and defamatory); see also *Davis v. Keystone Printing Service, Inc.*, 111 Ill. App. 3d 427, 444 N.E.2d 253.

The complaint in the present case alleges that defendants published statements falsely ascribing to plaintiff conduct and characteristics making him unfit for the proper conduct of his lawful business, trade or profession as a Chicago police officer and that defendants imputed to plaintiff conduct constituting a criminal offense, *i.e.*, conspiracy to kill the mayor of Chicago. The complaint alleges further that defendants knew the statements were false or entertained serious doubts as to their truth, and in reckless disregard for their truth published the false, defamatory, malicious and scandalous statements.

██ We hold that the article, on its face, gives rise to factual inferences tending to support a charge of actual malice. (See *Coursey v. Greater Niles Township Publishing Corp.*, 40 Ill. 2d 257, 239 N.E.2d 837.) These allegations, taken together with other factual allegations in the complaint and with the fact that the statements are slanderous *per se* and therefore words from which malice is presumed, are sufficient to charge actual malice. See *Colson v. Stieg*, 86 Ill. App. 3d 993, 408 N.E.2d 431, citing *Coursey v. Greater Niles Township Publishing Corp.*, 40 Ill. 2d 257, 239 N.E.2d 837.

We conclude that count one of the complaint was legally sufficient. The trial court erred in dismissing the defamation count of this action.

For the above reasons, the judgment of the circuit court of Cook County dismissing count one is reversed and the cause is remanded for further proceedings consistent with the holdings contained herein.

Reversed and remanded.

FREEMAN, P.J., and WHITE, J., concur.