WILLIAM D. SMITH, Plaintiff-Appellant, v. COPLEY PRESS, INC., *et al.*, Defendants-Appellees (The City of Springfield *et al.*, Defendants).

Fourth District   No. 4—85—0388

Opinion filed January 31, 1986.

.Jeffrey B. Levens, of Sturm & Levens, of Springfield, for appellant.

Barber, Hall, Segatto & Hoffee, of Springfield (Barry O. Hines, of counsel), for appellees.

JUSTICE MORTHLAND delivered the opinion of the court:

The plaintiff appeals from entry of summary judgment for the defendants in a defamation action. We reverse.

The plaintiff, William D. Smith, worked as a jailer or "turnkey" at the Springfield police station. This facility was used to incarcerate both local offenders and Federal prisoners. When the incidents giving rise to this litigation occurred, the plaintiff had been working as a jailer for approximately five months. As a jailer, the plaintiff was a civilian employee of the Springfield police department. Although he had a high school degree and had taken some courses in law enforcement administration at a junior college, there were no educational or training prerequisites to the jailer position. The plaintiff had access to keys which unlocked the cell doors and others within the jail facility. He carried no weapon, although he had access to a nightstick. The manual which details the jailer's duties indicates that the plaintiff had no authority to allow a person other than a police officer into the jail without prior authorization by a superior. The plaintiff was required to conduct periodic body counts of the prisoners, inventory and store valuables found on prisoners, and ensure that prisoners had been properly searched by the police officer who booked them. The jailer was also required to know where alarms were located within the jail and was to see that proper booking procedures were followed.

On the night of January 22-23, 1978, while the plaintiff was on duty, two Federal prisoners attempted to escape. The prisoners sawed through bars on one door within the jail and appeared in a front room where the plaintiff and another jailer were on duty. The plaintiff and his fellow jailer grappled with the escaping prisoners and within a short time, police arrived and returned the prisoners to their cells.

The January 23, 1978, morning edition of the State Journal-Register, a newspaper owned and operated by defendant Copley Press, Inc., contained a front-page story detailing the escape attempt. The article reported that the plaintiff and his fellow jailer were treated for injuries and that the plaintiff and a third jailer, Karl E. Kaylor, had been arrested on charges of aiding the escape attempt. The article

paraphrased the Springfield police chief as stating that he "would not be able to say how or why the jailers aided the prisoners until investigations were complete." The article then continued:

> "According to a police source, Smith was homosexually involved with one or both of the convicts, leading to his alleged involvement in the escape.

> The source also said Smith owned a black onyx ring, which allegedly was given to one of the prisoners in return for sexual favors. The ring was later found in one of the cells."

Subsequently, officials apparently determined that the escaping prisoners had used materials smuggled into their cells by a girlfriend of one of the escapers during Mr. Kaylor's shift at the jail. A grand jury refused to indict the plaintiff for his alleged involvement in the escape attempt. Nevertheless, the plaintiff did not return to work with the police department after January 23, 1978.

On January 22, 1979, the plaintiff filed suit in Sangamon County circuit court alleging that the paragraphs from the article quoted above had libeled him. Included as defendants were the State Journal-Register's parent company, Copley Press, the newspaper's reporters and editors, the city of Springfield, and two Springfield policemen, Detective James Dickerson and Captain Frank Hoover. Only the newspaper defendants remain at this juncture.

Counts I and III pertain to the newspaper defendants. Count I alleged that the newspaper defendants knew or should have known that the article's statements concerning the plaintiff's alleged homosexual activity were false and that these defendants did not believe in the truth of the assertedly libelous statements. Count III alleged that the newspaper defendants either failed to exercise reasonable care in determining the truth of their statements concerning the plaintiff or lacked reasonable grounds for their belief that these statements were true. Under count I, the plaintiff also alleged that the article was published with reckless disregard of the truth.

The unnamed police source referred to in the allegedly libelous statements was identified in depositions as Captain Frank Hoover, the highest ranking police official on duty during the escape. On February 26, 1985, the newspaper defendants filed a motion for summary judgment. In their motion the defendants argued that the plaintiff was a "public official" within the meaning of the *New York Times* rule. (*New York Times Co. v. Sullivan* (1964), 376 U.S. 254, 11 L. Ed. 2d 686, 84 S. Ct. 710.) They further claimed that since the source of the allegedly defamatory material in the article was a high ranking police official who believed his statements concerning the plaintiff to be

true, and since the reporter relied on his source in good faith, no issue of fact concerning the existence of the "actual malice" required by *New York Times* existed.

On May 8, 1985, the circuit court granted the motion for summary judgment against the plaintiff.

The plaintiff appeals, contending that if he is deemed a "public official," his count I and the record sufficiently present a factual issue as to whether the newspaper defendants acted with "actual malice." The plaintiff also seeks to reverse the trial court's determination that count III, the claim under a negligence theory, was inadequate due to the plaintiff's "public official" status.

In 1964, the United States Supreme Court limited the scope of defamation laws to bring them in line with the goals of the free speech clause of the first amendment. The high court determined that:

> "The Constitutional guarantees require, we think, a federal rule that prohibits a public official from recovering damages for a defamatory falsehood relating to his official conduct unless he proves that the statement was made with 'actual malice'—that is, with knowledge that it was false or with reckless disregard of whether it was false or not." *New York Times Co. v. Sullivan* (1964), 376 U.S. 254, 279-80, 11 L. Ed. 2d 686, 706, 84 S. Ct. 710, 726.

The Supreme Court subsequently extended this "actual malice" standard to "public figures" as well as public officials. (*Curtis Publishing Co. v. Butts* (1967), 388 U.S. 130, 18 L. Ed. 2d 1094, 87 S. Ct. 1975.) None of the parties in the instant case contend that the plaintiff is a "public figure." Indeed, the defendants' motion for summary judgment was premised upon the plaintiff being a public official.

The United States Supreme Court further defined the term "public official" in *Rosenblatt v. Baer* (1966), 383 U.S. 75, 15 L. Ed. 2d 597, 86 S. Ct. 669. The *Rosenblatt* Court determined that " 'the public official' designation applies at the very least to those among the hierarchy of government employees who have, or appear to the public to have, substantial responsibility for or control over the conduct of governmental affairs." (383 U.S. 75, 85, 15 L. Ed. 2d 597, 605, 86 S. Ct. 669, 676.) Nevertheless, the Supreme Court cautioned that the "public official" characterization, with the attendant application of the *New York Times* malice standards, should be reserved for those positions in government in which "the public has an independent interest in the qualifications and performance of the person who holds it, beyond the general public interest in the qualifications and performance

of all government employees \*\*\*." *Rosenblatt v. Baer* (1966), 383 U.S. 75, 86, 15 L. Ed. 2d 597, 606, 86 S. Ct. 669, 676.

The defendants argue that the plaintiff, as a jailer, is indistinguishable from a police officer. Police officers, of whatever rank, are unquestionably "public officials" in Illinois. (*Coursey v. Greater Niles Township Publishing Corp.* (1968), 40 Ill. 2d 257, 239 N.E.2d 837.) The plaintiff counters that because of the lack of training or education required for the jailer position, the utter lack of authority over other employees or members of the public, and the total lack of discretion accorded him in performing his duties as jailer, he should not be considered a public official.

In our view, the plaintiff performed different duties and possessed significantly less authority than does a police officer, of whatever rank. His status as a "public official" is, therefore, not controlled by the *Coursey* case. The appellate court's statement concerning a public school principal in *McCutcheon v. Moran* (1981), 99 Ill. App. 3d 421, 425 N.E.2d 1130, is equally applicable to the plaintiff in this case. In *McCutcheon*, the appellate court noted that "[i]mplicit in the reasoning of *New York Times Co. v. Sullivan* is the concept of a freedom of the governed to question the governor, of those who are influenced by the operation of government to criticize those who control the conduct of government." (99 Ill. App. 3d 421, 424, 425 N.E.2d 1130, 1133.) The *McCutcheon* court termed the relationship a public school principal has to the conduct of government "too remote" to open such an individual to a qualifiedly privileged assault on their reputation. Likewise, the plaintiff here had no authority to control the workings of his government employer. Even conceding that abuse of the jailer position may affect the public interest, we cannot say that the plaintiff held a position of such apparent importance that the public had an independent interest in his qualifications and performance beyond the usual public interest in the qualifications and performance of any government employee.

We hold that the plaintiff was not a "public official" during the events which led to this lawsuit for purposes of the *New York Times* malice standards. Accordingly, we reverse the judgment of the circuit court and remand for further proceedings consistent with this opinion.

Reversed and remanded.

WEBBER and SPITZ, JJ., concur.