THIRD DIVISION 

June 28, 2000

Nos. 1-99-0277 and 1-99-0409, Consolidated

KAREN MORIARTY, 

Plaintiff-Appellant and Appellee,

v.

BOB GREENE; CHICAGO TRIBUNE COMPANY, a Corporation; and CHICAGO TRIBUNE NEWSPAPERS, INC., a Corporation, 

Defendants-Appellees and Appellants.

))

))

))

))

)

)

)

Appeal from the

Circuit Court of

Cook County

No. 95 L 14261

Honorable

David Donnersberger,

Judge Presiding.

PRESIDING JUSTICE CAHILL delivered the opinion of the court:

This consolidated appeal asks us to decide whether nine statements made by defendant Bob Greene in four columns published by defendant Chicago Tribune Company state a cause of action under Illinois defamation law. The trial court found that seven of the statements did not support claims for defamation and invasion of privacy under Illinois law.  The court dismissed those claims with an express written finding to allow interlocutory appeal under Rule 304(a).  155 Ill. 2d R. 304(a).  The court then found the remaining two statements actionable, but further found that its order involved a question of law appropriate for appeal under Rule 308(a).  155 Ill. 2d R. 308(a).  Plaintiff appealed the Rule 304(a) order.  Defendants appealed the Rule 308(a) order.  We allowed the Rule 308(a) appeal and consolidated both matters.  We affirm the Rule 304(a) order of the trial court, dismissing seven of the claims.  We answer the first certified question under Rule 308(a) "yes," affirming the order of the trial court, and remand for further proceedings.  We answer the second certified question "no," reversing the order of the trial court and dismissing the claim.  

A child custody dispute was resolved in a 1995 opinion of our supreme court granting custody to the biological father "forthwith."  The child had been placed for adoption by his biological mother immediately after birth and remained in the care and custody of the adoptive parents for four years, until the supreme court granted custody to the biological father in January 1995.  See 
In re Petition of Doe
, 254 Ill. App. 3d 405, 627 N.E.2d 648 (1993), 
rev'd
, 159 Ill. 2d 347, 631 N.E.2d 181 (1994), 
reh'g denied,
 159 Ill. 2d 362, 638 N.E.2d 181 (1994).  Plaintiff, a licensed clinical psychologist, coordinated a team of mental health professionals assembled at the father's request to implement the supreme court order awarding custody.    

Efforts to arrange a transition period for the transfer of custody from the adoptive parents failed.  The biological father, who took immediate custody of the child from the adoptive parents in April 1995, dismissed the team.  Plaintiff was then chosen by the biological father to counsel the child and to help him adjust to the new custody arrangement.  

Defendant Greene is a nationally syndicated columnist whose work appears locally in the Chicago Tribune.  Greene wrote several columns about the case.  Four of these columns address plaintiff's professional role in the case and contain the alleged defamatory statements.  

Greene's first column was published on May 17, 1995, several weeks after the father took custody of the child.  This column bears a caption "What Doctor Would Allow This?"  Plaintiff is identified as a member of the team of therapists assembled to carry out the court's custody order and as the only therapist later retained by the biological father.  The column criticizes the father's choice because plaintiff, though a psychologist, was not trained in child psychology.  The column then poses a question: what kind of child psychologist would recommend that a child be removed from the only home and family he had ever known and be given to strangers on one hour's notice?  Greene answers this question by saying "apparently none."  Bob Greene, 
What Doctor Would Allow This?
, Chi. Trib., May 17, 1995 (Tempo Section), at 1.   

A second column, captioned "Have You Ever Promised a Kid...," was published on May 21, 1995.  This column criticizes the father's alleged broken promise to the child that he could visit his adoptive family whenever he wished to do so.  Greene expresses a disbelief in statements attributed to the father and plaintiff that the child had not asked to see or talk to his adoptive family.  Greene then states that plaintiff  "readily admitted that she sees her job as doing whatever the natural parents instruct her to do."  Green also states that  plaintiff went on a vacation two weeks after the transfer, despite a promise to be available to the child daily.  Bob Greene, 
Have You Ever Promised a Kid . . .
, Chi. Trib., May 21, 1995 (Tempo Section), at 1.

A third column, captioned "You Just Don't Know What To Say,” published on August 27, 1995, suggests that the child experienced difficulties adjusting to his new life.  The column includes accounts of the child in imaginary conversations with his adoptive family.  The father's attorney is quoted as saying that the child and another child of the adoptive parents should be allowed to see each other.  The column ends with the statement that "another voice [is helping] to keep that from happening."  Bob Greene, 
You Just Don't Know What to Say
, Chi. Trib., August 27, 1995 (Tempo Section), at 1.

Plaintiff is identified as the "other voice" in a fourth column published on August 28, 1995, captioned "Doctor's Trust Has a Catch."  The column suggests that plaintiff’s decision to keep the children apart was motivated by plaintiff's plan to write a book.  Greene criticizes plaintiff's intention to write a book about the child's experience.  Greene writes "and the woman [he] has been told is a doctor he can trust is talking to him, getting him to confide in her, and then thinking about selling that child's thoughts on the open market."  The column concludes with plaintiff's statement that "'it would be a wonderful feather in my professional hat' to prove that her plan for [the boy] had worked."  Bob Greene, 
Doctor's Trust Has a Catch
, Chi. Trib., August 28, 1995 (Tempo Section), at 1.  Plaintiff also alleges that this column attributes the abrupt change in custody to her, in what Greene characterizes as a "sudden removal plan."  

The pleadings and motions in this case ultimately led to the filing of a fourth amended complaint that is the platform for the Rule 304(a) and Rule 308(a) orders under appeal.  No issues are raised with respect to the interlocutory orders disposing of the first three complaints.  The fourth amended complaint addresses the following nine statements contained in the three columns:

(1) "Some people wondered what kind of child psychologist could recommend a 4-year old boy be taken from his home and family on one hour's notice, loaded into a van with strangers and separated without contact from the people he considered his parent and his brother?"  Bob Greene, 
What Doctor Would Allow This?
, Chi. Trib., May 17, 1995 (Tempo Section), at 1; 

(2) Plaintiff  "has readily admitted that she sees her job as doing whatever the natural parents instruct her to do."   Bob Greene,  
Have You Ever Promised a Kid ...
, Chi. Trib., May 21, 1995 (Tempo Section), at 1;

 (3) "Within two weeks of [the child's] removal from his adoptive home . . . [plaintiff] reportedly had left the country for a trip of uncertain duration."  Bob Greene, 
Have You Ever Promised a Kid ...,
 Chi. Trib., May 21, 1995 (Tempo Section), at 1;

 (4) "another voice is helping to keep [a meeting between the child and his adoptive brother] from happening.”  Bob Greene, 
You Just Don't Know What to Say
, Chi. Trib., August 27, 1995 (Tempo Section), at 1; 

(5) Plaintiff was "the woman who came up with the plan to take [the child] from his adoptive home suddenly with no transition period."  Bob Greene, 
Doctor's Trust Has a Catch
, Chi. Trib., August 28, 1995 (Tempo Section), at 1; 

(6) Plaintiff was "the person selected by the natural parents to treat [the child,] and she does not feel the brothers who loved each other need to see or speak with each other."  Bob Greene, 
Doctor's Trust Has a Catch
, Chi. Trib., August 28, 1995 (Tempo Section), at 1; 

(7) It was plaintiff’s “sudden removal plan."  Bob Greene, 
Doctor's Trust Has a Catch
, Chi. Trib., August 28, 1995 (Tempo Section), at 1; 

(8) "And the woman [the child] has been told is a doctor he can trust is talking to him, getting him to confide in her, and then thinking about selling that child's thoughts on the open market."  Bob Greene, 
Doctor's Trust Has a Catch
, Chi. Trib., August 28, 1995 (Tempo Section), at 1; and 

(9) "It would be a 'wonderful feather in my professional hat' to prove that her plan for [the child] had worked, she said."  Bob Greene, 
Doctor's Trust Has a Catch
, Chi. Trib., August 28, 1995 (Tempo Section), at 1.

Count I of the fourth amended complaint alleges defamation 
per se
 as to statements 2 and 8.  Count II alleges defamation 
per se
 as to the remaining statements.  Count III alleges defamation 
per quod
 as to statements 2 and 8.  Count IV alleges defamation 
per quod
 as to the remaining statements.  Count V alleges false light invasion of privacy as to all statements.  Defendants filed a motion to dismiss counts II, III and V of the fourth amended complaint based on the court's earlier orders.  Defendants also sought certification under Rule 308(a) (155 Ill. 2d R. 308(a)) of the court's denial of the motion to dismiss claims relating to statements 2 and 8 as alleged in count I.    Plaintiff in turn asked for a Rule 304(a) finding as to the dismissal of counts II, III and V.  The court granted both motions, and the parties drafted an agreed order entered on January 8, 1999, dismissing counts II, III and V under section 2-615 of the Code of Civil Procedure (735 ILCS 5/2-615 (West 1996)), and finding no just reason delaying appeal under Rule 304(a).  155 Ill. 2d R. 304(a).  The order also contained certified questions addressing statements 2 and 8 for immediate appeal under Rule 308(a).  155 Ill. 2d R. 308(a).

We first address the defamation claim addressed to statements 2 and 8 certified for appeal under Rule 308(a).  155 Ill. 2d R. 308(a).  Our review of an appeal by permission under Rule 308(a) is 
de novo
.  
Reich v. Gendreau
, 308 Ill. App. 3d 825, 721 N.E.2d 634 (1999).  See also 
Weatherman v. Gary-Wheaton Bank of Fox Valley, N.A.
, 186 Ill. 2d 472, 480, 713 N.E.2d 543 (1999) (employing a 
de novo
 review on a Rule 308(a) appeal).  

The trial court found that the statement about plaintiff seeing her job as complying with the natural parents' instructions was defamatory 
per se
.  The question certified under Rule 308(a) reads:   "(1) When read in the context of the column attached to the Fourth Amended Complaint as Exhibit B, is the statement that plaintiff 'has readily admitted that she sees her job as doing whatever the natural parents instruct her to do' defamatory 
per se
 and incapable of a reasonable innocent construction?"  

We answer this question yes.

A statement is defamatory 
per se
 when the defamatory character of the statement is apparent on its face.  
Kolegas v. Heftel Broadcasting Corp
., 154 Ill. 2d 1, 10, 607 N.E.2d 207 (1992).  There are four recognized categories of 
per se
 defamatory statements: words that impute (1) the commission of a crime; (2) infection with a communicable disease; (3) inability to perform or want of integrity to discharge duties of office or employment and prejudice to a party; or (4) lack of ability in a person's trade, profession or business.  
Bryson v. News America Publications, Inc
., 174 Ill. 2d 77, 88, 672 N.E.2d 1207 (1996).  We believe that statement 2 is within the scope of the last two categories.  

Defendants contend that even if the statement is defamatory 
per se
, it is not actionable since it is susceptible to an innocent construction.  A statement that is defamatory 
per se
 is not actionable if reasonably capable of an innocent construction.  
Chapski v. Copley Press
, 92 Ill. 2d 344, 352, 442 N.E.2d 195 (1982).

Our supreme court first applied and defined the innocent construction rule in 
John v. Tribune Co.
, 24 Ill. 2d 437 (1962).  The 
John
 court held that an alleged defamatory statement must  be read as a whole, with words given their natural and obvious meaning.  But the rule also requires allegedly libelous words, if amenable to an innocent construction, to be so read and declared nonactionable as a matter of law.  
John
, 24 Ill. 2d at 442.  There followed a series of appellate decisions that were not always clear, but tended to favor innocent construction wherever possible, despite a context that was derogatory.  See generally 1 M. Polelle & B. Ottley, Illinois Tort Law §5.17 (2d. Ed. 1997).  

The innocent construction rule was revisited in 
Chapski
.  
Chapski
, 92 Ill. 2d at 352.  

The 
Chapski
 court noted that since 
John
 was decided in 1962, the innocent construction rule had been applied in a less-than-uniform manner.  
Chapski
, 92 Ill. 2d at 348.  The court attributed the inconsistent application to confusion in light of the broader protections now afforded under the first amendment of the United States Constitution and the availability of various privileges.  See, 
e.g., 
 
New York Times Co. v. Sullivan
, 376 U.S. 254, 11 L. Ed. 2d 686, 84 S. Ct. 710 (1964); 
Gertz v. Robert Welch, Inc
., 418 U.S. 323, 41 L. Ed. 2d 789, 94 S. Ct. 2997 (1974); 
Colson v. Stieg
, 89 Ill. 2d 205 (1982); 
Blair v. Walker
, 64 Ill. 2d 1 (1976); Restatement (Second) of Torts §§583 through 612 (1977).  
The court noted that the principle criticism of the 
John
 rule "seems to be that
 *** courts generally strain to find unnatural but possibly innocent meanings of words where such a construction is clearly unreasonable and a defamatory meaning is far more probable."  
Chapski
, 92 Ill. 2d at 350-

51. 

The court then went on to state:

"Given the inconsistencies, inequities and confusion that are now apparent from the interpretations and applications of the rule as originally announced in 
John
, and the broader protections that now exist to protect first amendment interests [citations] , together with the availability of the various privileges [citations], we are persuaded that a modification of the innocent-construction rule would better serve to protect the individual's interest in vindicating his good name and reputation, while allowing the first amendment guarantees that 'breathing space' essential to their fruitful exercise.  [Citation.]  We therefore hold that a written or oral statement is to be considered in context, with the words and the implications therefrom given their natural and obvious meaning; if, as so construed, the statement may reasonably be innocently interpreted or reasonably be interpreted as referring to someone other than the plaintiff it cannot be actionable 
per se
.  This preliminary determination is properly a question of law to be resolved by the court in the first instance; whether the publication was in fact understood to be defamatory or to refer to the plaintiff is a question for the jury should the initial determination be resolved in favor of the plaintiff.  
Troman v. Wood
, (1975) 62 Ill. 2d 184, 189."  
Chapski
, 92 Ill. 2d at 351-

52.  

Here, the statement that plaintiff  "readily admitted that she sees her job as doing whatever the natural parents instruct her to do" is capable of an innocent construction, but when considered in the context of the column, and the words are given their natural and obvious meanings, a "defamatory meaning is far more probable."  
Chapski
, 92 Ill. 2d at 350-51.   

Defendants contend that plaintiff's obligation to follow the biological parents' instructions does not imply that plaintiff will engage in unprofessional or unethical conduct.  Defendants analogize this statement to a lawyer saying he will do whatever his client tells him to do.  Defendants claim that the lawyer's comment implies he will protect the client within the bounds of ethics.  Defendants conclude that the statement about how plaintiff sees her job is subject to a similar interpretation.

The ready response to defendants' analogy to a lawyer's statement is "maybe yes, maybe no."  If the lawyer's response is an answer to the question: "what will you do if your client asks you to waive a jury trial?," an innocent construction is not only "far more probable" but, in context, readily apparent and easily disposed of as a question of law.  But if the lawyer is responding to the question: "what will you do if your client asks you to forge a document?" the context turns the alleged answer into one that cannot "reasonably be innocently interpreted."  
Chapski
, 92 Ill. 2d at 352.  The initial determination of what meaning is more probably intended must be resolved in favor of plaintiff and ultimately left to the jury.  

The statement we here consider presents a closer question than the one we have forced on defendants' hypothetical statement with our hypothetical questions.  But the requirement of a context to properly evaluate the statement remains the same.  If plaintiff in this case had responded to a statement from the father that she was to always keep the best interests of the child uppermost in mind as she went about her work, we would need not strain for an innocent construction.  But the overriding point of Greene's columns was that the biological parent was not acting in the best interest of the child and that plaintiff was aiding and abetting the actions and desires of the biological parent.  In that context, a construction that plaintiff will ignore her professional obligations to her child-client in favor of the wishes of the child's parent is more probable.  It is a question for the jury.  
Chapski
, 92 Ill. 2d at 352.  

Nor is the statement entitled to protection as an opinion as defendants claim.  The Supreme Court has held that a statement will receive first amendment protection when it does not state actual facts.  
Milkovich v. Lorain Journal Co.
, 497 U.S. 1, 20, 111 L. Ed. 2d 1, 19, 110 S. Ct. 2695, 2706 (1990).  Only statements capable of being proven true or false are actionable; opinions are not.  
Kirchner v. Greene
, 294 Ill. App. 3d 672, 680-81, 691 N.E.2d 107 (1998).  Whether plaintiff  "
readily admitted
 that she sees her job as doing whatever the natural parents instruct  her to do" is a factual assertion, capable of being proven true or false. (Emphasis added.)  

The second certified question relates to statement 8 and reads:

"(2) When read in the context of the column attached to the Fourth Amended Complaint as Exhibit D, is the statement that 'the woman [the child] has been told is a doctor he can trust is talking to him, getting him to confide in her, and then thinking about selling that child's thoughts on the open market[?]' defamatory 
per se
 and incapable of a reasonable innocent construction?" 

Statement 8 is from the August 28 column.  This column alleges that plaintiff had at one time considered writing a book about the child. 

Plaintiff claims this statement is defamatory 
per se
 because the reasonable reader would infer that defendants are reporting on plaintiff's current plans, when in fact, at the time the column was published, plaintiff had already dismissed the idea of writing a book.  The column establishes that plaintiff admitted she considered writing a book about the child.  Plaintiff admitted she asked the biological father for permission to write such a book, saying "what would be wrong about writing a book?"  But, as the column reports, the biological father refused to give his permission.  The column quotes plaintiff's affirmative statement that she is no longer considering writing a book.  Defendant Greene then expresses his opinion about plaintiff's now-discarded notion of writing a book.  The column does not, as plaintiff claims, falsely report that plaintiff is writing a book.  The column merely expresses Greene's opinion that it would be unprofessional for plaintiff to write a book about the child.  Greene's belief that no book should be written is a  nonactionable opinion.  
Milkovich
, 497 U.S. at 20, 111 L. Ed. 2d at 19, 110 S. Ct. at 2706.  The court erred in not dismissing statement 8. 

We turn to the remaining defamation 
per se
 claims in count II dismissed under section 2-615 of the Code of Civil Procedure.  We review dismissals under section 2-615 
de novo
.  
A.P. Properties, Inc. v. Goshinsky
, 186 Ill. 2d 524, 714 N.E.2d 519 (1999). 

We conclude that the dismissal of the remaining seven statements was appropriate.  As we examine each in turn, it becomes clear that we are dealing with nothing more than the opinions of a newspaper columnist who has strong views on how child custody cases should be handled.

An opinion of a journalist is not defamatory unless the opinion implies the existence of undisclosed facts or discloses incorrect or incomplete facts.  Even then, rhetorical hyperbole and political opinions may be protected.  
Milkovich
, 497 U.S. at 20, 111 L. Ed. 2d at 19 , 110 S. Ct. at 2706.  Whether a statement is an opinion or a fact is a question of law.  
Owen v. Carr
, 113 Ill. 2d 273, 279, 497 N.E.2d 1145 (1986).   In Illinois, we employ a totality of the circumstances analysis based on 
Ollman v. Evans
, 750 F.2d 970 (D.C. Cir. 1984), 
cert. denied
, 471 U.S. 1127, 86 L. Ed. 2d 278, 105 S. Ct. 2662 (1985), cited favorably in 
Mittelman v. Witous
, 135 Ill. 2d 220, 243, 552 N.E.2d 973 (1989).  See also 1 M. Polelle & B. Ottley, Illinois Tort Law, §5.02 (2d. ed. 2000).  

Four points are stressed in opinion analysis: the (1) precision of the statement; (2) verifiability of the statement; (3) literary context of the statement; and (4) public and social contexts of the statement.  If it is clear that the writer is exploring a "subjective view, an interpretation, a theory, conjecture or surmise, rather than claiming to be in possession of objectively verifiable facts, the statement is not actionable."  
Haynes v. Alfred A. Knopf, Inc
., 8 F.3d 1222, 1227 (7th
 Cir. 1993).  In this context, we note that the alleged defamatory statements in this case appeared, not in the news columns of defendant's newspaper, but in a regularly featured column by a journalist who regularly expressed his personal opinions on a wide range of public and social issues.

The first alleged defamatory statement, allowing for all the derogatory inferences plaintiff suggests, is nothing more than Greene's opinion that a professional psychologist would not participate in or condone the abrupt removal of a child from an adoptive home where he had lived for four years.  Greene is not a psychologist, but he is entitled to his opinion.  

Passing over the second statement, which attributes an admission to the plaintiff that she alleges is false and that we have found states a cause of action, we turn to the third statement.  There, again allowing for all derogatory inferences suggested by plaintiff, we are left with Greene's opinion that a reputable psychologist would not take a vacation while a client was in crisis.  It is a variation of the often-heard criticism directed at doctors: "take two aspirin and call me in the morning," or at lawyers: "he never returns my phone call."  It is a nonactionable opinion.  See generally 1 M. Polelle & B. Ottley,  Illinois Tort Law §5.02 (2d. ed. 2000).

The fourth statement is Greene's opinion that a reputable psychologist would not counsel a complete separation of a child from his former family and siblings in the circumstances of this case.  The reasonable inference is that, in Greene's opinion, plaintiff is a bad psychologist.  Lawyers and other professional have been called worse, without courts finding a cause of action.  See 1 M. Polelle & B. Ottley,  Illinois Tort Law §5.02 (2d. ed. 2000).

The fifth, sixth and seventh statements we find nonactionable based on the same analysis applicable to the third and fourth statements.  

The eighth statement has been disposed of in our analysis of the Rule 308(a) appeal.  The ninth statement we find to be a nonactionable opinion for the reasons set out in support of our analysis of statements 3, 4, 5 and 6.  

We turn to count III.  The count alternatively alleges defamation 
per quod
.  Plaintiff argues in her brief that if the nine statements are not defamatory 
per se
, they are defamatory 
per quod
 "as that cause of action is recognized in 
Bryson v. News America Publications, Inc
., 174 Ill. 2d 77, 672 N.E.2d 1207 (1996)."

Bryson
 noted that a traditional 
per quod
 claim applies when a statement is innocent on its face but extrinsic facts make the statement defamatory.  
Bryson
, 174 Ill. 2d at 103.  The 
Bryson
 court also held that a 
per quod
 action can lie where a statement is defamatory on its face but does not fall into one of the 
per se
 categories.  
Bryson
, 174 Ill. 2d at 103.  A plaintiff must plead and prove special damages to recover under either 
per quod
 category.  
Bryson
, 174 Ill. 2d at 103.

Under a 
per quod
 analysis, the opinions of Greene in the seven statements we have found nonactionable under a defamation 
per se
 analysis remain nonactionable opinions.  Nothing among the extrinsic facts plaintiff has pled, or, alternatively, the slights on her reputation that may fall outside the orbit of her professional work, removes the statements from the realm of opinion as opinion is defined in 
Ollman
 and 
Mittelman
.  The court was correct to dismiss count III.  

Last, we must decide whether counts IV and V allege false light invasion of privacy as to the nine statements.  The false light tort protects a person's interest in being free from false publicity.   
Lovgren v. Citizens First National Bank
, 126 Ill. 2d 411, 418, 534 N.E.2d 987 (1989).  To state a claim for false light invasion of privacy a plaintiff must allege that the defendant's actions placed the plaintiff in a false light before the public, that the false light would be highly offensive to the reasonable person, and that the defendant acted with actual malice.  
Lovgren
, 126 Ill. 2d at 419-20. A motion to dismiss for failure to state a false light claim will not be granted unless no set of facts can be proven to entitle the plaintiff to relief.  
Lovgren
, 126 Ill. 2d at 419.  

Count IV alleges that statements 2 and 8, appearing in the May 21 and August 28 columns, placed plaintiff in a highly offensive false light.  We believe that plaintiff stated a cause of action for false light invasion of privacy as to statement 2 in the May 21 column.  This statement attributes to plaintiff an admission that she sees her job as doing what the biological parents instructed.  This statement implies that plaintiff will disregard her professional obligations to the child she was retained to counsel if they are contrary to wishes of the parent.  We believe that a jury could find the implication of professional irresponsibility offensive to the reasonable person.  Plaintiff also alleged that defendants knew the statement was false or acted in reckless disregard of its falsity.  Whether defendants acted with actual malice is a question for the jury.  
Dubinsky v. United Airlines Master Executive Council
, 303 Ill. App. 3d 317, 331, 708 N.E.2d 441 (1999).

We do not believe that plaintiff states a cause of action for false light as to statement 8 in the August 28 column.  This statement refers to plaintiff's one-time consideration of writing a book about her treatment of the child and conveys Greene's opinion that no book should be written.  We have already found that the statement is not defamatory 
per se
, but an expression of Greene's opinion.  
Milkovich
, 497 U.S. at 20, 111 L. Ed. 2d at 18, 110 S. Ct. at 2706.  While it is not necessary to be defamed to maintain a false light claim, the similarities between defamation and false light claims may make certain restriction and limitations for defamation equally applicable to false light claims.  
Schaffer v. Zekman
, 196 Ill. App. 3d 727, 734, 554 N.E.2d 988 (1990).  This would include an opinion that allegedly placed plaintiff in a false light.  That part of count IV relating to statement 8 is dismissed.

Count V alleged false light invasion of privacy as to the remaining seven statements.  We have already decided that these statements are not defamatory 
per se
, but expressions of Greene's opinion.  
Milkovich
, 497 U.S. at 20, 111 L. Ed. 2d at 18, 110 S. Ct. at 2706.  The same analysis applies to the false light claims. 

To summarize: counts I and IV are dismissed with prejudice as to statement 8 only.  The dismissal by the trial court of counts II , III and V is affirmed.  The case is remanded for further proceedings on counts I and IV as they relate to statement 2 contained in the first certified question under Supreme Court Rule 308(a).  155 Ill. 2d R. 308(a).  

Affirmed in part and reversed in part; cause remanded.   

CERDA and BURKE, JJ., concur.