# Illinois Official Reports

## Appellate Court

---

***Vicars-Duncan v. Tactikos*, 2014 IL App (4th) 131064**

---

| | |
|---|---|
| Appellate Court Caption | SHEILA VICARS-DUNCAN, Plaintiff-Appellant, v. DENNIS TACTIKOS, Defendant-Appellee. |
| District & No. | Fourth District<br>Docket No. 4-13-1064 |
| Filed | August 27, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Plaintiff's complaint alleging that defendant's letter to the editor concerning the way plaintiff, an assistant State's Attorney, handled a traffic ticket received by plaintiff's son constituted defamation *per se* and false light invasion of privacy was properly dismissed by the trial court, notwithstanding plaintiff's contentions that she was not a public official and that she adequately pleaded claims for defamation *per se* and false light invasion of privacy, since plaintiff was a public official to the extent that she performed duties that were peculiarly governmental in character and highly charged with the public interest, and as such, she had to plead that defendant acted with malice, but defendant's letter did not accuse plaintiff of knowingly lying to his son and, under the circumstances, did not rise to the level of defamation *per se*, and likewise, plaintiff failed to adequately plead that defendant acted with malice for purposes of the false light claim. |
| Decision Under Review | Appeal from the Circuit Court of McLean County, No. 12-L-37; the Hon. Thomas E. Little, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on
Appeal

Dawn L. Wall (argued) and Robert W. Porter, both of Costigan &
Wollrab, P.C., of Bloomington, for appellant.

John P. Schwulst (argued), of Schwulst & Roseberry, P.C., of
Bloomington, for appellee.

Panel

JUSTICE POPE delivered the judgment of the court, with opinion.
Justices Knecht and Steigmann concurred in the judgment and
opinion.

## OPINION

¶ 1    In March 2012, plaintiff, Sheila Vicars-Duncan, filed a two-count complaint against
defendant, Dennis Tactikos, alleging defamation *per se* (count I) and false light (count II).
Plaintiff is an assistant State's Attorney in McLean County. In May 2012, defendant filed a
motion to dismiss pursuant to sections 2-615 and 2-619 of the Code of Civil Procedure (Code)
(735 ILCS 5/2-615, 2-619 (West 2012)), arguing plaintiff did not state a claim for defamation
*per se* because she is a public official and did not plead malice. In December 2013, the trial
court found plaintiff was a public official and granted defendant's motion to dismiss.

¶ 2    Plaintiff appeals and argues the trial court erred in granting defendant's motion to dismiss.
She argues she (1) is not a public official for defamation purposes, (2) adequately pleaded a
cause of action for defamation *per se*, and (3) adequately pleaded a cause of action for false
light invasion of privacy. We affirm.

¶ 3                                        I. BACKGROUND

¶ 4    Plaintiff is employed as an assistant State's Attorney in McLean County and, at all times
relevant to this case, was assigned to handle the prosecution of traffic offenses. In March 2012,
plaintiff filed a two-count complaint against defendant, alleging defamation *per se* (count I)
and false light (count II) for statements defendant made in a letter to the editor published on
March 20, 2011, in The Pantagraph, a Bloomington newspaper. As relevant to this appeal,
plaintiff alleged defendant's statements claimed she lacked the integrity to discharge the duties
of her position as an assistant State's Attorney and portrayed her in a "false light to cause
others to believe that [p]laintiff used tactics of falsehoods, bullying and intimidation as a
means of procuring guilty pleas from innocent citizens."

¶ 5    Defendant's letter to the editor, which plaintiff attached to her complaint, stated as follows:

"My son had the pleasure of dealing with the McLean County judicial system as he
was cited for a lane change violation on I-55 and given a summons with no police
officer at the scene when it allegedly happened.

When he went to court he was told by the prosecutor in traffic court, a Sheila
Vicars-Duncan, that there were witnesses present who simply were not, and telling my

son he was fighting a case he simply could not win, in an attempt to get my son to plead guilty to a charge which was ultimately dismissed.

I expressed my displeasure in an email to Ms. Duncan with what I perceived to be the bullying of an 18-year-old by the prosecutor. She sent a response telling me all about the judicial system and what her day consists of, but not addressing the issue of her telling my son an untruth.

When I responded back to both her and her boss, a William Yoder, he actually had the nerve to respond with a condescending letter exalting Ms. Duncan's virtues, apologizing [for] my son's inability to understand what his prosecutor was actually saying ('cause we all know that convictions are not really what she is going for) and dismissing me with a 'Thank you for your comments.'

I guess with Mr. Yoder at the helm, the law will be upheld, but there will be no justice."

¶ 6 In May 2012, defendant filed a motion to dismiss pursuant to sections 2-615 and 2-619 of the Code (735 ILCS 5/2-615, 2-619 (West 2012)). In the first part of the motion, as relevant to this appeal, defendant argued count I should be dismissed pursuant to section 2-619 of the Code because plaintiff (1) is a public official, and as a public official, plaintiff "must plead malice," but she "failed to plead malice in Count I"; and (2) "pled no facts that will withstand a motion to dismiss under Qualified Privilege, Innocent Construction, Opinion, or Malice against a Public Official." In the second part of the motion, defendant argued count I should be dismissed pursuant to section 2-615 of the Code because the statements were "not defamatory on their fac[e]." In the third part of the motion, defendant argued count II should be dismissed pursuant to section 2-619 of the Code because plaintiff did not plead malice and she had no facts to show defendant acted with malice. Defendant attached computer printouts of emails between him, plaintiff, and William Yoder, the McLean County State's Attorney. He did not submit an affidavit.

¶ 7 In October 2012, plaintiff filed a written response to defendant's motion to dismiss. She argued she was not a public official because she "is not an elected official, does not set policy, does not hold herself out to the public as setting policy, and must act with the authorization of her superiors." Plaintiff argued defendant's statements constituted defamation *per se* because he "directly and implicitly" accused her of lying, which is a statement accusing an attorney of violating the professional rules of ethics.

¶ 8 In October 2012, the trial court held a hearing on plaintiff's motion for summary judgment. Neither a verbatim transcript nor a bystander's report of the hearing (Ill. S. Ct. R. 323(c) (eff. Dec. 13, 2005)) is included in the appellate record. The court took the matter under advisement. The same month, defendant submitted written argument in support of his motion. He argued plaintiff is a public official under the definition used in section 12-9(b)(1) of the Criminal Code of 1961 (Criminal Code) (720 ILCS 5/12-9(b)(1) (West 2010)) because she discharges a public duty for McLean County.

¶ 9 In December 2012, the trial court granted defendant's motion to dismiss. The court found plaintiff was a public official because "her duties are peculiarly governmental in character and highly charged with the public interest, most especially to those citizens appearing in traffic court. The performance of the role of prosecutor, even in the context of traffic cases[,] *** can have the potential for abuse. Therefore[,] public discussion and public criticism directed toward the performance of that office cannot be inhibited by threat of prosecution under state

libel laws." Because plaintiff was a public official, she was required to plead malice, which she did not. The court did not rule on defendant's other arguments, but it gave plaintiff 28 days to file an amended complaint.

¶ 10    In January 2013, plaintiff filed a motion to reconsider. In October 2013, the trial court denied plaintiff's motion to reconsider. Plaintiff chose to stand on her complaint, rather than amend it.

¶ 11    This appeal followed.

¶ 12                                    II. ANALYSIS

¶ 13    Plaintiff appeals and argues the trial court erred in granting defendant's motion to dismiss. She argues she (1) is not a public official for purposes of a defamation *per se* action, (2) adequately pleaded a cause of action for defamation *per se*, and (3) adequately pleaded a cause of action for false light invasion of privacy.

¶ 14                              A. Standard of Review

¶ 15    A section 2-615 motion to dismiss challenges the legal sufficiency of the complaint. *Sandholm v. Kuecker*, 2012 IL 111443, ¶ 54, 962 N.E.2d 418. It alleges defects on the face of the complaint. *Bryson v. News America Publications, Inc.*, 174 Ill. 2d 77, 86, 672 N.E.2d 1207, 1213 (1996). "In ruling on a section 2-615 motion to dismiss, the court must accept as true all well-pleaded facts in the complaint and all reasonable inferences which can be drawn therefrom. [Citations.] In making this determination, the court is to interpret the allegations of the complaint in the light most favorable to the plaintiff." *Id.*, 672 N.E.2d at 1213-14. A dismissal pursuant to section 2-615 is reviewed *de novo. Solaia Technology, LLC v. Specialty Publishing Co.*, 221 Ill. 2d 558, 579, 852 N.E.2d 825, 838 (2006).

¶ 16    A section 2-619 motion to dismiss asserts certain defects or defenses outside of the complaint that defeat the claim. *Sandholm*, 2012 IL 111443, ¶ 54, 962 N.E.2d 418. This includes the ground "the claim asserted against defendant is barred by other affirmative matter avoiding the legal effect of or defeating the claim." 735 ILCS 5/2-619(a)(9) (West 2012). "When ruling on the motion, the court should construe the pleadings and supporting documents in the light most favorable to the nonmoving party. [Citation.] The court must accept as true all well-pleaded facts in plaintiff's complaint and all inferences that may reasonably be drawn in plaintiff's favor." *Sandholm*, 2012 IL 111443, ¶ 55, 962 N.E.2d 418. A dismissal pursuant to section 2-619 of the Code is reviewed *de novo. Id.*

¶ 17                    B. Defendant's Motion To Dismiss Count I

¶ 18    Before addressing the merits of the parties' arguments, we note defendant's motion to dismiss contains a defect requiring clarification. The first part of defendant's motion to dismiss states it is pursuant to section 2-619 of the Code. However, as relevant to this appeal, he asserted count I should be dismissed because, based solely on plaintiff's allegation she is an assistant State's Attorney, she is a public official, and as a public official, she "must plead malice," but she did not. Because defendant's argument challenges the legal sufficiency of plaintiff's complaint based on allegations appearing on its face, and does not assert her claim is completely defeated by an affirmative matter outside the complaint, defendant's motion should have been raised under section 2-615 of the Code. See *Reynolds v. Jimmy John's Enterprises,*

*LLC*, 2013 IL App (4th) 120139, ¶¶ 25, 34, 988 N.E.2d 984 (discussing distinctions between section 2-615 motions and section 2-619 motions). Since plaintiff has not alleged she was prejudiced by defendant's error, we will treat this argument as if it had been filed pursuant to section 2-615 of the Code. See *Sandholm*, 2012 IL 111443, ¶ 54, 962 N.E.2d 418; *Gouge v. Central Illinois Public Service Co.*, 144 Ill. 2d 535, 541-42, 582 N.E.2d 108, 111 (1991) (motion mislabeled as a section 2-619 motion treated as a section 2-615 motion). With this clarification resolved, we now turn to the issue of whether plaintiff is a public official for defamation purposes and must plead malice.

¶ 19                                    1. *Defamation, Generally*

¶ 20      To state a defamation claim, a plaintiff must show (1) the defendant made a false statement about the plaintiff, (2) the defendant made an unprivileged publication of that statement to a third party, and (3) that publication caused damages. *Solaia*, 221 Ill. 2d at 579, 852 N.E.2d at 839. "A defamatory statement is a statement that harms a person's reputation to the extent it lowers the person in the eyes of the community or deters the community from associating with her or him." *Green v. Rogers*, 234 Ill. 2d 478, 491, 917 N.E.2d 450, 459 (2009). There are two forms of defamatory statements: defamation *per quod* and defamation *per se*. *Tuite v. Corbitt*, 224 Ill. 2d 490, 501, 866 N.E.2d 114, 121 (2006). If a defamatory statement is actionable *per se*, the plaintiff need not prove actual damage to his or her reputation to recover; this is presumed. *Bryson*, 174 Ill. 2d at 87, 672 N.E.2d at 1214.

¶ 21      "A statement is defamatory *per se* if its harm is obvious and apparent on its face." *Solaia Technology*, 221 Ill. 2d at 579, 852 N.E.2d at 839. "In Illinois, there are five categories of statements that are considered defamatory *per se*: (1) words that impute a person has committed a crime; (2) words that impute a person is infected with a loathsome communicable disease; (3) words that impute a person is unable to perform or lacks integrity in performing her or his employment duties; (4) words that impute a person lacks ability or otherwise prejudices that person in her or his profession; and (5) words that impute a person has engaged in adultery or fornication." *Id.* at 579-80, 852 N.E.2d at 839.

¶ 22                    2. *Who Is a "Public Official" for Defamation Purposes?*

¶ 23      In *New York Times Co. v. Sullivan*, 376 U.S. 254, 279-80 (1964), the United States Supreme Court held a "public official" must prove a "statement was made with 'actual malice'–that is, with knowledge it was false or with reckless disregard of whether it was false or not" to recover damages for defamation. The court's decision in *New York Times* "draws its force" from constitutional protections of citizens' rights to freedom of speech and expression. *Rosenblatt v. Baer*, 383 U.S. 75, 84 (1966). "Criticism of government is at the very center of the constitutionally protected area of free discussion. Criticism of those responsible for government operations must be free, lest criticism of government itself be penalized." *Id.* at 85. The public-official designation "applies at the very least to those among the hierarchy of government employees who have, *or appear to the public to have*, substantial responsibility for or control over the conduct of governmental affairs." (Emphasis added.) *Id.* Such governmental employees occupy positions of "such apparent importance that the public has an independent interest in the qualifications and performance of the person who holds it, beyond the general public interest in the qualifications and performance of all government employees." *Id.* at 86.

¶ 24    In *Coursey v. Greater Niles Township Publishing Corp.*, 40 Ill. 2d 257, 239 N.E.2d 837 (1968), our supreme court considered whether a police officer was a public official under *New York Times* and *Rosenblatt*. The *Coursey* court noted a police officer's duties, even those of a patrolman, are "peculiarly 'governmental' in character and highly charged with the public interest" and "[t]he abuse of a patrolman's office can have great potentiality for social harm." *Id.* at 265, 239 N.E.2d at 841. The supreme court concluded public discussion and criticism directed toward a police officer's performance should not be "inhibited" and thus a police officer was required to prove malice to recover for defamation. *Id.* In *Reed v. Northwestern Publishing Co.*, 124 Ill. 2d 495, 530 N.E.2d 474 (1988), our supreme court once again considered whether a police officer was a public official for defamation purposes. Despite the fact a patrolman would have little say in departmental policy, " '[t]he cop on the beat is the member of the department who is most visible to the public. *** Misuse of his authority can result in significant deprivation of constitutional rights and personal freedoms ***. The strong public interest in ensuring open discussion and criticism of his qualifications and job performance warrant[s] the conclusion that he is a public official.' " *Id.* at 509, 530 N.E.2d at 480 (quoting *Gray v. Udevitz*, 656 F.2d 588, 591 (10th Cir. 1981)). While recognizing a fact-intensive analysis may be required for some public employees to determine whether application of the *New York Times* standard is appropriate, the supreme court in *Reed* also recognized this factual analysis is not required "with respect to those government positions the duties of which are widely recognized," such as a police officer. *Id.* at 511, 530 N.E.2d at 481.

¶ 25                          3. *Is Plaintiff a Public Official?*

¶ 26    Plaintiff contends her position as an assistant State's Attorney is analogous to the plaintiff in *Smith v. Copley Press, Inc.*, 140 Ill. App. 3d 613, 488 N.E.2d 1032 (1986). In *Smith*, this court considered whether a jailer at the Springfield police station was a public official for defamation purposes. This court found the plaintiff, as a jailer, performed "different duties and possessed significantly less authority than does a police officer" and concluded *Coursey* did not control. *Id.* at 617, 488 N.E.2d at 1034. The *Smith* court considered *McCutcheon v. Moran*, 99 Ill. App. 3d 421, 425, 425 N.E.2d 1130, 1133 (1981), where the First District concluded a public school principal was not a public figure. The *McCutcheon* court stated the reasoning behind the *New York Times* standard was "the concept of a freedom of the governed to question the governor, of those who are influenced by the operation of government to criticize those who control the conduct of government." *Id.* at 424, 425 N.E.2d at 1133. A school principal's relationship with the "conduct of government is far too remote" to apply the *New York Times* standard. *Id.* (*cf. Basarich v. Rodeghero*, 24 Ill. App. 3d 889, 321 N.E.2d 739 (1974) (coaches and teachers are public officials and are required to plead actual malice)). In line with *McCutcheon*, the *Smith* court concluded the plaintiff-jailer "had no authority to control the workings of his government employer," and even if his actions affected the public interest, he did not hold "a position of such apparent importance that the public had an independent interest in his qualifications and performance beyond the usual public interest in the qualifications and performance of any government employee." *Smith*, 140 Ill. App. 3d at 617, 488 N.E.2d at 1034-35.

¶ 27    Defendant, as he did in the trial court, relies on *People v. Scates*, 393 Ill. App. 3d 566, 914 N.E.2d 243 (2009), to support his argument plaintiff is a public official. In *Scates*, the defendant was convicted under section 12-9(b)(1) of the Criminal Code (720 ILCS

5/12-9(b)(1) (West 2006)) of threatening a public official, and on appeal he argued the victim, an assistant Attorney General, was not a public official. *Id.* at 568, 914 N.E.2d at 244. This court turned to the text of section 12-9(b)(1) and concluded an assistant Attorney General was included within the scope of section 12-9(b)(1). *Id.* at 570, 914 N.E.2d at 246. (We note section 12-9(b)(1) has been amended to expressly include assistant Attorneys General. 720 ILCS 5/12-9(b)(1) (West 2012).) Defendant's reliance on *Scates* is misplaced. Our inquiry into whether plaintiff is a public official for defamation purposes is guided by *New York Times* and its progeny, not a statute criminalizing certain threats.

¶ 28    We note neither party has provided an Illinois case finding an assistant State's Attorney is a public official for purposes of defamation, nor has our research revealed such a case. See generally *Tunnell v. Edwardsville Intelligencer, Inc.*, 43 Ill. 2d 239, 247, 252 N.E.2d 538, 543 (1969) (city attorney as plaintiff must prove actual malice because he is a public official); *Wanless v. Rothballer*, 115 Ill. 2d 158, 173, 503 N.E.2d 316, 322 (1986) (village attorney as plaintiff must prove actual malice because he is a public official); *Hill v. Schmidt*, 2012 IL App (5th) 110324, ¶¶ 5, 20, 24, 969 N.E.2d 563 (assistant State's Attorney's statements were made in his official capacity as a public official and protected by the fair-report privilege).

¶ 29    In its order, the trial court found plaintiff's duties as an assistant State's Attorney "are peculiarly governmental in character and highly charged with the public interest" and the "performance of the role of prosecutor *** can have the potential for abuse." We agree. An assistant State's Attorney performs an important role in the governance of local communities and the potential for abuse weighs in favor of free and unbridled discussion of those persons occupying such a role. An assistant State's Attorney is as much a public official as a patrolman and the supreme court's analysis in *Coursey* and *Reed* applies equally here. An assistant State's Attorney is the "State's" attorney–he or she represents the government in pursuing criminal and quasi-criminal charges against citizens and is the face of the elected State's Attorney in the courtroom. As happened in this case, plaintiff, as assistant State's Attorney, had the authority to dismiss the traffic charge when the citizen witness failed to appear for trial. In traffic court, assistant State's Attorneys are dealing most often with *pro se* people–people without attorneys to represent them. Even traffic convictions can have serious consequences for drivers. People who do not know their legal rights and are unrepresented by counsel are at the mercy of the State. It is crucial to the fair administration of justice that assistant State's Attorneys act with utmost integrity–they are in a greatly superior position in the courtroom. As such, citizens should be free and uninhibited to criticize the official conduct and actions of assistant State's Attorneys. Only when a plaintiff pleads actual malice, *i.e.*, that defendant made statements knowing they were false or with reckless disregard for the truth, can an assistant State's Attorney properly maintain a suit for defamation. As such, plaintiff was required to plead defendant acted with actual malice. This she failed to do.

¶ 30    *4. Did Plaintiff Adequately Plead Defendant Made a Defamatory Per Se Statement?*

¶ 31    Even if we found plaintiff was not a public official for defamation purposes, we would still affirm the trial court's dismissal of plaintiff's claims. Plaintiff argues she adequately pleaded a cause of action for defamation *per se*. Specifically, she contends defendant's statements "besmirched her character insofar as they indicated that she lied to a criminal defendant in her professional capacity" and thus imputed she lacked integrity in performing her employment

duties. The trial court did not base its decision on this argument. However, this court reviews the trial court's judgment, not its rationale, and may affirm for any reason the record supports. See *Brooks v. McLean County Unit District No. 5*, 2014 IL App (4th) 130503, ¶ 14, 8 N.E.3d 1203. Whether the statement does not constitute defamation *per se* affords a broader basis to affirm the trial court's judgment as plaintiff would have no claim–regardless of whether she is a public official.

¶ 32   Plaintiff relies on *Owen v. Carr*, 113 Ill. 2d 273, 497 N.E.2d 1145 (1986), to support her argument a statement accusing an attorney of violating the professional rules of ethics imputes a want of professional integrity. In *Owen*, the defendant's statement alleged the plaintiff, an attorney, had intimidated a judge. *Id.* at 276, 497 N.E.2d at 1146. The supreme court concluded the statement was subject to an innocent interpretation but continued and addressed the plaintiff's contention the statement constituted an accusation he violated the Code of Professional Responsibility. *Id.* at 279-82, 497 N.E.2d at 1148-49. In *dicta*, the court stated an accusation an attorney has violated an ethical rule "serves to impute a lack of professional integrity and may damage an attorney's practice." *Id.* at 282, 497 N.E.2d at 1149. Plaintiff asserts defendant's statement accuses her of lying, which could be considered a violation of Rule 4.1 of the Illinois Rules of Professional Conduct of 2010 (Ill. R. Prof. Conduct (2010) R. 4.1 (eff. Jan. 1, 2010)), and therefore, consistent with *Owen*, the statement imputed a lack of professional integrity. Plaintiff's argument is unpersuasive.

¶ 33   In *Owen*, the supreme court stated "[l]anguage to be considered defamatory *per se* must be so obviously and naturally harmful to the person to whom it refers that a showing of special damages is unnecessary." *Owen*, 113 Ill. 2d at 277, 497 N.E.2d at 1147. See also *Costello v. Capital Cities Communications, Inc.*, 125 Ill. 2d 402, 417, 532 N.E.2d 790, 796 (1988) (noting the defamatory meaning must be "evident"). Thus, the statement must obviously impute a want of integrity in the performance of plaintiff's employment duties. See *Pease v. International Union of Operating Engineers Local 150*, 208 Ill. App. 3d 863, 871, 567 N.E.2d 614, 619 (1991). Defendant vaguely accuses plaintiff of telling his son an "untruth"–it is not entirely clear what the untruth was–and "bullying." Moreover, defendant's letter stated he "perceived" the prosecutor's action to be bullying of an 18-year-old. This is clearly a nonactionable statement of opinion. See *Moriarty v. Greene*, 315 Ill. App. 3d 225, 233, 732 N.E.2d 730, 739 (2000). Defendant's statements do not obviously accuse plaintiff of lacking integrity in performing her job as an assistant State's Attorney or engaging in prosecutorial misconduct. Rather, his letter to the editor, taken in whole, accuses her of not being fair to his son during an adversarial process. Accusing someone of unfairness expresses nonactionable opinion.

¶ 34   Further, if we were to accept the *Owen dicta*, plaintiff's reliance on Rule 4.1 to assert defendant's statement accused her of an ethical violation is misplaced. Rule 4.1 provides "a lawyer shall not knowingly *** make a false statement of material fact or law to a third person." Ill. R. Prof. Conduct (2010) R. 4.1 (eff. Jan. 1, 2010). However, defendant did not accuse plaintiff of *knowingly* lying to his son. As such, defendant's statement is not "obviously and naturally harmful" to plaintiff. *Owen*, 113 Ill. 2d at 277, 497 N.E.2d at 1147. As a matter of law, we conclude defendant's letter to the editor did not rise to the level of defamation *per se*.

¶ 35                    C. Defendant's Motion To Dismiss Count II

¶ 36   Defendant's motion to dismiss count II stated it was pursuant to section 2-619 of the Code. However, he argued plaintiff failed to state a cause of action for false light because the tort

requires the pleading of actual malice and she did not include such an allegation. He added plaintiff "has no facts that would show" his intent was anything other than to express his opinion. As discussed above, an argument alleging the legal insufficiency of the complaint must be brought pursuant to section 2-615 of the Code, not section 2-619, which admits the legal sufficiency of the complaint. See *Reynolds*, 2013 IL App (4th) 120139, ¶ 31, 988 N.E.2d 984. Defendant's motion to dismiss count II must be treated as a section 2-615 motion to dismiss.

¶ 37    Three elements are required to state a cause of action for false light: "First, the allegations in the complaint must show that the plaintiffs were placed in a false light before the public as a result of the defendants' actions. Second, the court must determine whether a trier of fact could decide that the false light in which the plaintiffs were placed would be highly offensive to a reasonable person. Finally, the plaintiffs must allege and prove that the defendants acted with actual malice, that is, with knowledge that the statements were false or with reckless disregard for whether the statements were true or false." *Kolegas v. Heftel Broadcasting Corp.*, 154 Ill. 2d 1, 17-18, 607 N.E.2d 201, 209-10 (1992).

¶ 38    Plaintiff relies on *Moriarty* to argue she has met the elements of false light. We need not decide whether plaintiff has adequately pleaded the first two elements as this case can be decided on the malice requirement. To avoid confusion, we note plaintiff is required to plead malice because it is an element of false light–it does not depend on her status as a public official as discussed above. In *Moriarty*, the First District found the plaintiff alleged malice because her complaint alleged the defendants "knew the statement was false or acted in reckless disregard of its falsity." *Moriarty*, 315 Ill. App. 3d at 236-37, 732 N.E.2d at 741. In contrast, plaintiff alleged defendant "had no personal knowledge regarding the matters, events or statements characterized and falsely portrayed" in the letter to the editor. An allegation defendant did not have personal knowledge of the underlying events is distinct from an allegation he acted with knowledge the statements were false or in reckless disregard of their falsity. The trial court properly dismissed count II, as plaintiff failed to adequately plead defendant acted with malice, which is required to state a cause of action for false light.

¶ 39                          III. CONCLUSION
¶ 40    For the reasons stated, we affirm the trial court's judgment.

¶ 41    Affirmed.